Skelton, Judge,
delivered the opinion of the court:
The plaintiff, Geraldine W. Travis, is a former employee at the Base Exchange, Malstrom Air Force Base, Montana. Plaintiff claims that her removal and subsequent failure to be rehired were wrongful and is seeking back pay.
Plaintiff began regular part-time employment as a sales clerk at the Base Exchange Retail Store on October 19,1967. On January 3,1968, she was orally notified by her immediate superior, Mrs. Mary A. Richardson, that she would be separated from her position on January 8, 1968, in connection with a reduction in force. Plaintiff immediately sought administrative review, alleging that she had not been separated as part of a reduction in force and that racial discrimination was the real reason for her removal and for her failure to be rehired. There was an informal investigation, a formal hearing and a comprehensive Hearing Officer’s Report, a review of the Hearing Officer’s Report and findings of fact by the Equal Opportunity Officer for the Department of the Air Force, and finally, a review of the Air Force’s action by the United States Civil Service Commission Board of Appeals and Review. At all levels it was determined that plaintiff was removed in connection with a reduction in force program and that racial discrimination played no part in either her removal or her failure to be rehired. Plaintiff then filed a petition in this court for back pay and allowances, alleging that the decision of the *70 Board of Appeals and Review was arbitrary, capricious, and not supported by substantial evidence.
We find that the determination by the Board of Appeals and Review that plaintiff’s removal was based on a bona fide reduction in force was neither arbitrary nor capricious and further, that it was supported by substantial evidence.[1]

Bona Fide Reduction in Force

There is a strong presumption that public officials act in good faith and the court will only look behind an administrative determination such as the one herein involved if the plaintiff meets the difficult burden of showing that the decision was so lacking in rational support as to be characterized as arbitrary or capricious. Horne v. United States, 190 Ct. Cl. 145, 150, 419 F. 2d 416 (1969). The administrative record compiled in this case contains substantial evidence to support the determination that there was a reduction in force program in effect in the early part of January 1968, and that plaintiff’s removal was pursuant to such program. The evidence showed that the reduction in force was necessitated by the normal post-Christmas decrease in sales. Also in evidence, though of much less significance, were two letters, dated September 8, 1967, and November 17, 1967, received by the manager of the Malmstrom Air Force Base Exchange from the Department of the Army and Air Force, Headquarters, Army and Air Force Exchange Service, Dallas, Texas, directing attention toward the need to reduce operating expenses, particularly personnel costs.
The record indicates that on or about January 8, 1968, the date of plaintiff’s separation, four other sales clerks were also separated. One of these separations, that of Mrs. Ethel *71 Koontz, who had been employed in Toyland, a branch of the Main Retail Store, was also listed as a “reduction in force.” Significantly, Mrs. Koontz had been reinstated as a regular part-time employee on September 1, 1967, and would thus have had seniority over plaintiff, who was rehired as a regular part-time employee on October 19, 1967. Mrs. Benedicte B. Schulteis, a temporary part-time employee at Toyland, was separated at the termination of her temporary employment period. Mrs. Frankie Hughes and Mrs. Anita Balser, full-time employees at the Main Retail Store, resigned because of personal reasons and pregnancy, respectively. On January 12, 1968, Miss Gail Casolaro, a college girl working over the Christmas holidays on casual labor status, was separated. These separations strongly suggest that a reduction in force program had been put in effect due to the after Christmas fall-off in sales.
Plaintiff points to the retention or employment of specified personnel in an unsuccessful attempt to prove that there was no reduction in force in effect and that her removal and failure to be rehired were wrongful. Respecting most of the personnel mentioned by plaintiff, there is ample evidence in the record to indicate that these people were properly retained or employed in lieu of plaintiff. Plearing Officer’s Exhibit 2A, Enclosure L, pages 3-6, reproduced in defendant’s reply brief at pages 8-12, states in pertinent part:
*****
The specific objections raised by Mrs. Travis, regarding the employment or retention of other employees, are considered below.
1. Mrs. Brigitte Franklin: Mrs. Travis states that she was hired the same day as Mrs. Franklin, who is white, and wonders why Mrs. Franklin wasn’t separated instead of herself. The answer given by Mrs. Richardson, who made the decision, in her testimony and the letter attached to her testimony is that she was forced to separate someone;' therefore, she started with her least experienced employees and had to make a choice. Her reason for keeping Mrs. Franklin was, in fact, that Mrs. Franklin had had experience in the camera section and ran the baby care section. The camera section is one of the most important sections in the retail store and it *72 simply is not possible to place an inexperienced individual behind the counter. Therefore, it was determined at this time Mrs. Franldin had more valuable and necessary qualifications. Mrs. Richardson was very satisfied with Mrs. Travis’ work, and this was the only reason for the separation. It should also be noted that Mrs. Franklin’s hours were cut, along with those of other employees who were retained at this time.
2. Mrs. Wilma Jean Miller. Mrs. Travis complained that Mrs. Miller, who came from Glasgow to Malmstrom, was given preferential treatment and that it was unfair for a transferee to put local regulars out of a job. However, the records indicate that Mrs. Miller voluntarily separated from Glasgow Air Force Base, where she was a customers services specialist (one of the most difficult and important specialties in the rental store) on 26 October 1967. She was reinstated as a regular full-time employee at Malmstrom on 18 December 1967. She was reinstated and not rehired. AFR 147-15e, paragraph 22, Section e, states that regular full-time employees reemployed in a regular full-time category within 90 days from the date of their separation will be considered as having been in continuous service in a leave without pay status during that period. Thus, Mrs. Miller is given a preference by the regulation, as she was reinstated within the 90-day period, and, in addition, Mrs. Miller had a particular talent and training in a very important area — Customer Services.
3. Gail Casolaro. Mrs. Travis alleged that a college girl, Miss Casolaro, had worked at the Exchange after she was separated. Check of the records indicates that Miss Casolaro worked approximately from 22 December 1967 through 12 January 1968, on a casual labor basis. She then returned to college for her spring semester. The investigating officer agrees with Mrs. Travis that it is improper that Miss Casolaro was allowed to work beyond the date on which such employees as Mrs. Travis and Koontz were separated. Even though it represents five days, it isn’t proper.
_4. Mabel Stack. Mrs. Travis asserted that someone was hired in Miss Casolaro’s place. This is unequivocably denied by Mrs. Richardson, who does the hiring, and Miss Olson, who would process any such action. A woman, Miss Mabel Stack, was appointed to the BX as a service station attendant as of 22 January 1968. She was brought to the main store initially for some training on the cash register, approximately two weeks according to Mrs, *73 Richardson. However, she wasn’t hired by Mrs. Richardson, as she did not work in the main store or its branches. She was a regular full-time employee in the service station and was separated as of 4 April 1968.
5. Mrs. Helen Jones. Mrs. Travis asserts that Mrs. Jones was hired into the Short Stop to do cashier’s work just prior to Mrs. Travis’ being separated. She states that this is evidence of discrimination against her. The record indicates that Mrs. Jones had been employed as a regular full-time employee in the warehouse of the Exchange since 28 June 1967 and that she was separated on 22 December 1967, when there was no longer sufficient work for her in her prior position. She was reinstated on 4 January as a regular full-time employee in the Short Stop, and was subsequently, on 25 January 1968, made a regular part-time employee, apparently in accordance with the personnel cost reduction program, and as of 16 May 1968 she was separated. She stated in her exit interview one of the reasons that she was quitting was because of the abuse she suffered at the hands of Mrs. Travis every time Mrs. Travis visited the Short Stop for purchases, it should be noted that Mrs. Jones was hired well before Mrs. Travis at the Malmstrom Exchange and was reinstated well within a 90-day period after her separation and, therefore, there was nothing improper or discriminatory about such action. Tt would merely represent the same kind of consideration that Mrs. Travis would wish were she in Mrs. Jones’ position with Mrs. Jones’ seniority.
6. Mrs. Doreene L. Doughty. Mrs. Travis complained that Mrs. Doughty was hired shortly after she, Mrs. Travis was separated. Mrs. Doughty was hired on 27 January 1968 as a service station attendant. She wasn’t hired by Mrs. Richardson. As was mentioned before, the service station does not come under Mrs. Richardson’s hiring jurisdiction. On 7 March 1968 Mrs. Doughty was transferred to the Short Stop as a sales clerk on a temporary part-time basis. Mrs. Doughty was not transferred to this position immediately after Mrs. Travis’ separation. It should also be noted from the statements of Mrs. Richardson and Miss Olson that Mrs. Travis had become so emotionally upset by her complaint that she was felt by the management to be an unstable prospect for reemployment. Hence, this in part may explain why Mrs. Travis was not subsequently rehired to fill this position at the Short Stop.
*74 7. Betty J. Varone. Mrs. Travis mentions in her testimony a girl with long, blond hair. It has been determined that this refers to a Betty J. Varone, who was hired as a service station attendant on 29 January 1968, and thus once again was not hired by Mrs. Richardson. She is still holding down that particular position.
8. Outdoor Living Center. Mrs. Travis stated with reference to the Outdoor Living Center that a number of personnel were hired prior to the opening or reopening of the Outdoor Living Center. The Outdoor Living Center is called Toyland during the winter months, and this year it closed down some time during the first week in February and opened in April as the Outdoor Living Center, a further indication incidentally that jobs would have to be cut back as part of the BX store closed during that period. When the Outdoor Living Center opened, Mrs. McClain, sales supervisor of the main store, was sent down to the Outdoor Living Center to take over, along with the same stock boy who had worked there the previous year. No new employees were hired to work in the Outdoor Living Center until Mrs. Clare Kirken-dall was hired on 14 May 1968 on a regular part-time basis.
9. Mrs. Marie Gotts. Mrs. Travis complained in her statement that Mrs. Marie Gotts got to work a half hour longer every day than she did. Search of the records will indicate that Mrs. Gotts was at that time a regular full-time employee, and paragraph 18, sections a and b, AFR 147-15, indicate that a regular full-time employee will be hired for an expected period of more than 90 days with a regularly assigned tour of duty of 35 hours or more per week. A regular part-time employee is assigned a regular tour of duty of less than 35 hours per week. Therefore, it is only proper that Mrs. Gotts was allowed or able to work half an hour a day more than Mrs. Travis.
It seems clear, from the above, that the actions of the Base Exchange management were proper in most respects. The exception arises in the case of Miss Oasolaro. The retention of Miss Casolaro beyond the separation date of Mrs. Travis (regardless of the period of time involved) was improper.
* * * * *
It should be stressed that Miss Stack, Mrs. Doughty, and Betty Varone were all hired as service station attendants and *75 that the service station was a completely separate operation with its own manager. Mrs. Eichardson, the Eetail Store Manager, hired only for the main store and its branches, but had no authority to hire employees for the service station. Thus, the hiring of employees by the service station is certainly not inconsistent with the existence of a reduction in force program at the Main Eetail Store and its branches.
According to the evidence on record, only one sales clerk was hired by the Main Eetail Store between the time of plaintiff’s separation on January 8, 1968, and May 10, 1968. That person was Sergeant Charles McGraw, hired in March 1968, as a specialist in the hunting and fishing department.
It appears clear from the evidence that a valid reduction in force program was in effect during the slack sales period after Christmas and that plaintiff’s separation was pursuant thereto. Mrs. Eichardson was forced to choose between plaintiff and Mrs. Franklin, both of whom had been hired on the same day. She chose to retain Mrs. Franklin because of this employee’s additional experience in the camera department. While a slight irregularity admittedly occurred when Miss Oasolaro was allowed to work five days after plaintiff was separated, such a minor impropriety cannot be deemed to have made plaintiff’s separation wrongful so as to allow recovery.

Failure to Re-employ

We next must consider the evidence as to the reasons why plaintiff was not re-employed in the Base Exchange Main Eetail Store when openings became available. The record shows that on April 22, 1968, plaintiff’s attorney met with Lt. Colonel Eufus K. Conoley, the Deputy Equal Employment Opportunity Officer. Previous to this meeting, Colonel Conoley was told by Mr. Thomas J. Martin, the Base Exchange General Manager, that a job would be available for Mrs. Travis about the end of May 1968. Colonel Conoley advised plaintiff’s counsel of this fact, but neither plaintiff nor her counsel ever pursued this apparent offer of employment. Instead they submitted a discrimination complaint about April 26,1968, which was received by the Deputy Equal *76 Employment Opportunity Officer on May 3,1968. Mr. Martin stated that he was expecting plaintiff to contact him. Plaintiff testified that she was told according to the regulations former employees were given first consideration, and, therefore, she was waiting to be called hy the Base Exchange.
The evidence indicates that sales clerk positions did in fact become available at the Main Retail Store in May 1968. Mrs. Duran was hired on May 10,1968. Mrs. Mary Lyons was employed on May 21, 1968, and Mrs. Owens began work on May 31,1968. In addition, on May 14,1968, Mrs. Clare Kirlc-endall was hired to work in the Outdoor Living Center, a branch of the Main Retail Store. Mrs. Travis was undoubtedly qualified for each of these positions, and, had she applied, would have been required to foe considered first. The Board of Appeals and Review found that plaintiff’s failure to be reemployed in May 1968 was due to “unfortunate misunderstandings” on the part of plaintiff and Mr. Martin, each thinking the other would take the initiative. Perhaps it was a misunderstanding or perhaps it was due to unfortunate pride, each party being too proud to make the first move. In any event, the Board, after considering all the evidence, properly found that the failure to re-employ plaintiff was not wrongful.

Racial Discrimination

Plaintiff has alleged throughout these administrative proceedings and in this court that, although she was ostensibly separated under a reduction in force program, the real basis for her removal and for her failure to be rehired, was racial discrimination. At every stage of administrative review it was specifically determined that racial discrimination was not a causative factor in plaintiff’s separation or in her failure to be •re-employed. We find that this administrative determination was supported by substantial evidence.

90-Day Probationary Period

Plaintiff contends that her removal was not effective until she received written notice as provided in Air Force Regulations 147-16, ¶48d(4), and that she did not receive such *77 written notice until several days after the expiration of the 90-day probationary period provided for in Air Force Regulations 147-15, ¶10. The Board found that plaintiff’s removal was within the 90-day probationary period. Air Force Regulations 147-15, ¶48«(1) provides that “Employees serving in a probationary period may be separated at any time during that period without prior notice. In these separations employees will not have recourse to the grievance procedure.”
We think the regulations were complied with and that there was substantial evidence to support the findings of the Board.

Failure to Subpoena Witness from Viet Nam

Plaintiff claims that she was denied due process of law when the hearing officer refused to subpoena Mr. Daniel Dunham from Viet Nam while admitting his testimony in the form of a written statement. Mr. Dunham was the Manager of the Base Exchange until early January 1968, when he volunteered for duty in Viet Nam. He was a material adverse witness, and plaintiff contends that she should have been given the opportunity to confront him.
Plaintiff’s argument here is without merit. The Air Force’s refusal to bring Mr. Dunham back from Viet Nam did not violate the controlling regulations. Air Force Regulations 40-713, ¶296 provides as follows:
29. When and How Hearings Are Conducted:
e. Requests for the attendance of necessary witnesses are made to the hearing officer at least 10 calendar days before the date of the hearing. Any witnesses under Air Force jurisdiction are made available, upon a showing of a reasonable necessity therefor, when the complainant makes such a request and it is admimstratvoely practicable to comply with the request. Reasons for denial of a request for the appearance of an employee as a witness are documented in the complaint record. [Emphasis supplied.]
It would not have been “administratively practicable” to produce Mr. Dunham as a witness since he was in Viet Nam. Furthermore, plaintiff was offered the opportunity to ex *78 amine Mr. Dunham by deposition or interrogatories, but failed to avail herself of this opportunity.
CONCLUSION
We hold that the decision of the Board of Appeals and Review that plaintiff was properly separated under a reduction in force program was supported by substantial evidence and was neither arbitrary nor capricious.
Accordingly, defendant’s motion for summary judgment is granted, plaintiff’s motion for summary judgment is denied, and plaintiff’s petition is dismissed.

 Prior to the enactment of Public Law 91-350 this court lacked jurisdiction to hear claims arising out of non-approprlated fund activities such as the Army and Air Force Exchange Service. Keetz v. United States, 168 Ct. Cl. 205 (1964). Defendant vigorously argues that the court still lacks jurisdiction to entertain claims for pay by Base Exchange employees since Public Law 91-350 limits the court’s jurisdiction to claims arising out of contracts to which a Base Exchange was a party and Exchange employees have no contract. However, since it Is clear that plaintiff has no case on the merits, we defer decision of this difficult jurisdictional question. See Monett v. United States, 190 Ct. Cl. 1, 5 n. 4, 419 F. 2d 434, 436 (1969), cert. denied, 400 U.S. 846 (1970).