**Roy C. HOPKINS**

v.

**The UNITED STATES.**

No. 342–72.

United States Court of Claims.

March 19, 1975.

Thomas H. McGrail, Washington, D. C., atty. of record, for plaintiff.

Thomas W. Petersen, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION TO DISMISS PETITION

KUNZIG, Judge.

The issue presented in this case of first impression is whether we have jurisdiction to grant a money judgment against the United States for an alleged improper discharge of an employee by a nonappropriated fund instrumentality of the United States. We hold that the 1970 amendment to the Tucker Act (Pub.L. 91–350) confers jurisdiction on this court over the claim asserted by plaintiff.

Plaintiff was discharged on August 6, 1968 from his position as a civilian employee of the European Exchange System of the Army and Air Force Exchange Service (AAFES), a nonappropriated fund instrumentality. He was discharged for alleged acts of misconduct incompatible with continued employment. Plaintiff seeks by this suit to recover from the United States back pay and appropriate allowances for the period following his alleged improper discharge. His action is grounded on the claim that his separation was arbitrary and capricious, was a breach of his contract of employment, and was in violation of due process and of prescribed regulations and procedures.

The United States has moved to have the petition dismissed on the procedural ground that no claim is stated within the jurisdiction of this court. For the reasons given below, we deny defendant's motion.[1]

---

1. Judge Skelton, in his carefully considered dissent, suggests *sua sponte* that "plaintiff has not alleged a cause of action even under the theory of the majority and his petition should be dismissed." While this suggestion is interesting, it is premature at this time to decide this issue. Defendant has neither asked nor even suggested that the petition be dismissed on the ground that no claim is stated on which relief could be granted. Rather, defendant has

## LEGAL BACKGROUND

██ The doctrine of sovereign immunity precludes suits against the Federal Government unless such immunity has been specifically waived by an act of Congress. United States v. Clarke, 33 U.S. (8 Pet.) 436, 443, 8 L.Ed. 1001 (1834). In this court, under the Tucker Act, 28 U.S.C. § 1491 (1970), only suits against the United States are permitted. Therefore, our jurisdiction exists only where such immunity has been waived. Prior to 1970, no act of Congress had waived sovereign immunity with respect to contracts of nonappropriated fund instrumentalities.

In 1942 the Supreme Court decided Standard Oil Co. v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942). It held that a state statute which imposed a tax on the distribution of motor vehicle fuel would be unconstitutional if it was meant to apply to the Army's post exchanges. The exchanges, the Court said, "are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department * * *." However, the Court also stated that the "government assumes none of the financial obligations of the exchange." 316 U.S. at 485, 62 S.Ct. at 1170.

This latter statement in *Johnson, supra,* has served as the basis for a series of decisions of this court holding that we lack jurisdiction over disputes involving claims against nonappropriated fund activities. The first such case was Borden v. United States, 126 Ct.Cl. 902, 116 F.Supp. 873 (1953). Borden had contracted with the Army Exchange Service to be a senior accountant for a 2-year period. The issue raised was whether the United States could be sued on this employment contract with a nonappropriated fund instrumentality. We held the United States could not be sued be-

cause, as the Supreme Court held in *Johnson, supra,* if the Government assumed none of the Army Exchange Service's financial obligations, then no consent had been given by the Government to such suits. A similar result was reached in Pulaski Cab Co. v. United States, 157 F.Supp. 955, 141 Ct.Cl. 160 (1958), wherein plaintiff company had a contract with an exchange to provide cab services. Again, in G. L. Christian and Assoc. v. United States, 312 F.2d 418, 160 Ct.Cl. 1 (1963), cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), we said in dictum, "[T]he contracts of such agencies [post exchanges, et al.], although made by Government officers, do not bind appropriated funds, do not create a debt of the United States, and may not be vindicated in this court." 312 F.2d at 425, 160 Ct.Cl. at 14. More recently, in Kyer v. United States, 177 Ct.Cl. 747, 369 F.2d 714 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967), we arrived at the same result with regard to a sales commission contract with a nonappropriated fund agency other than a post exchange.

Seeing the failure by other litigants to obtain relief under a contract theory, one plaintiff attempted to recover via a different route. In Keetz v. United States, 168 Ct.Cl. 205 (1964), the plaintiff sued to recover back pay on the ground that his separation from the AAFES as an employee was illegal. Rather than to assert a contract of employment, Keetz alleged that civilian employees of post exchanges were Federal employees and relied on the violation of regulations of the executive department as a jurisdictional basis for his suit. We denied recovery, holding that plaintiff was not a Federal employee. No elaboration was made, but the *Keetz* court cited Gradall v. United States, 329 F.2d 960, 161 Ct.Cl. 714 (1963), in which it was held that plaintiff's employment in the AAFES did not constitute a civilian "office or

moved to have the petition dismissed solely on the question of jurisdiction. By our decision today we do not foreclose the possibility of a future dismissal on the substantive ground the

dissenting judge suggests. We merely hold that this court does have *jurisdiction* over the claim asserted.

position under the United States Government" within the meaning of the dual compensation provision, § 212(a) of the Economy Act of 1932. In *Gradall,* the court reasoned:

> The trend of the pertinent decisions, statutes and regulations has generally been to establish that employees of Exchanges are not Federal employees, except for the purpose of unemployment compensation. However, this trend does not supply a definitive answer to what is meant by holding a position "under the United States Government" under the [Economy] Act of 1932. The Government contends that the logical and reasonable test is whether the services performed in the position constitute "Federal service" because performed for a Federal instrumentality, and not whether the person who holds the position is compensated by appropriated or nonappropriated funds. To accept this test as determinative merely because plaintiff performed services for a Federal instrumentality would be to accept an unrealistic and nebulous view of the actual "position" of both plaintiff and the instrumentality. For example, the American Red Cross, the United Service Organizations, the national banks, and several other institutions are "instrumentalities" of the Government. However, their employees are not subject to the dual compensation restrictions of the Act of 1932. No one has ever contended that they hold a position "under the United States Government" under the Act.

Gradall, 329 F.2d at 964, 161 Ct.Cl. at 720–21.

In summary, the decisions of this court prior to the enactment of Pub.L. 91–350 (1970) have held that no jurisdiction has been granted to hear claims against the United States where a nonappropriated fund agency is involved since (1) the United States did not obligate itself on contracts of such agencies, and (2) employees of such agencies do not qualify as Federal employees.

**2.** Pub.L. 91–350 was originally passed by the Senate as S. 980. The Senate version would

## ENACTMENT OF PUBLIC LAW 91–350

While this court recognized a lack of jurisdiction over claims against nonappropriated fund activities, we also recognized the harshness of the result which effectively precluded alleged injured plaintiffs from obtaining a forum in which the merits of their claims could be aired. In *Keetz, supra,* we stated:

> We are aware that plaintiff is placed in somewhat of a difficult position in that if he seeks redress of his claim in a Federal District Court directly against the Exchange Service his claim might be dismissed. * * * However, we believe that in these situations (especially where the question of the waiver of sovereign immunity is involved) it is up to Congress to remedy this apparent harsh result, and the courts should refrain from legislating by judicial fiat.

*Id.* 168 Ct.Cl. at 207.

The injustice and inequity worked by this jurisdictional "loophole" was again identified in *Kyer, supra,* where we stated:

> We are mindful of the fact that the result reached spells an unduly harsh result. Plaintiff has searched in vain for a forum in which the merits of his claim might be aired. We add, though perhaps of little comfort, that the lack of jurisdiction which plaintiff has faced at every turn is a matter which sorely needs congressional correction.

*Id.* 369 F.2d at 719, 177 Ct.Cl. at 754.

It was within this setting that Congress, in 1970, enacted Public Law 91–350. The Tucker Act was amended in order to remove the sovereign immunity of the United States with respect to contracts of post exchange operations conducted within the military and the National Aeronautics and Space Administration. *See* H.R.Rep.No.91–933, 91st Cong., 2d Sess. 3 (1970) U.S.Code Cong. & Admin.News 1970, p. 3477.[2]

have completely removed the sovereign immunity of the United States with respect to con-

By this act, both 28 U.S.C. § 1346(a)(2)[3] and 28 U.S.C. § 1491[4] were amended to include the following new sentence:

> For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

Thus, for the first time, Congress expressly waived sovereign immunity to claims arising from post exchange contracts, thereby bringing such actions within our jurisdiction under the Tucker Act.

■ Applying this new amendment, plaintiff has asserted his claim can now be heard in this court. Relying on *Keetz, supra,* i. e., exchange employees are not Federal employees, plaintiff argues that his relationship with the AAFES is contractual, the same as employees in the private sector. He further argues that Congress intended to afford exchange employees relief when it enacted Pub.L. 91–350. Defendant, on the other hand, argues that Pub.L. 91–350 does not confer jurisdiction over plaintiff's claim. This position is based on defendant's characterization of exchange personnel as serving by "appointment" rather than by contract. Defend-

ant also relies on the failure of Congress to expressly include exchange personnel in the 1970 amendment as evidence of the lack of intent to waive sovereign immunity in the instant case.

We agree with plaintiff.

Defendant's assertion that employment with the AAFES does not arise out of a contractual relationship is unfounded. Defendant relies on the fact that employees of the Federal Government generally serve by "appointment" rather than by virtue of a contractual relationship. As early as 1850, the Supreme Court has held that public officers do not have contracts of employment, but are appointed to office. Butler v. Pennsylvania, 51 U.S. (10 How.) 402, 13 L.Ed. 472 (1850).[5] This "appointment" status has been extended by law to include employees of the United States who are subject to the laws administered by the Civil Service Commission. *See* 5 U.S.C. §§ 2104, 2105, 3105 (1970). However, defendant's reliance on the "appointed" rationale begs the fundamental question of whether employees of nonappropriated fund instrumentalities are, in fact, Federal employees. If exchange employees are not Federal employees, their status is not controlled by the "appointment" rationale. And, indeed, we have stated in *Keetz, supra,* and reaffirm here, that "an employee of the Exchange Service is not an employee of the United States." *Keetz, supra,* 168 Ct.Cl. at 207.[6] *See also*

3. Concurrent jurisdiction granted to the United States District Courts.

4. General jurisdictional grant to the United States Court of Claims.

5. The rationale for this "appointed" status is that the Government must have the power to change the agents who carry out the public duties, as well as the terms under which they work. Butler v. Pennsylvania, 51 U.S. (10 How.) 402, 416–17, 13 L.Ed. 472 (1850). *See also* Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900); Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890); United States v. Hartwell, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830 (1868); and Urbina v. United States, 428 F.2d 1280, 192 Ct.Cl. 875 (1970).

6. In fact, the Government in Keetz v. United States, 168 Ct.Cl. 205 (1964), argued that an

tracts of all nonappropriated fund activities. See S.Rep.No.268, 91st Cong., 1st Sess. 4–5 (1969). This bill was amended in the House of Representatives to remove immunity only from contracts of Exchange operations. The reason for this limitation was to insure that immunity would be waived with respect to nonappropriated fund instrumentalities *which have sufficient assets to pay their own way.* The amended act also added the requirement that the United States be reimbursed by the exchange instrumentality in the event any judgment against an exchange is paid by the United States. The intent of the House amendment was to eliminate any costs to the taxpayers of this expanded jurisdiction. *See* H.R.Rep.No.91–933, 91st Cong., 2 Sess. 3 (1970). The Senate agreed to the House amendments on July 14, 1970.

*Gradall, supra*; Brummitt v. United States, 329 F.2d 966, 967, 165 Ct.Cl. 78, 80 (1964).

 The employment status of non-Federal employees is governed by the same rules of law applicable to private employer-employee relationships. It is hornbook· law that such a relationship is contractual in nature. Fleming v. A. H. Belo Corp., 121 F.2d 207, 214 n. 9 (5th Cir. 1941), aff'd 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942), reh. denied, 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942); 53 Am.Jur.2d, Master and Servant, §§ 14, 66 (1970). "It is a fundamental principle of law that the relation of employer and employee is a relation created by contract, either express or implied." Ward v. Atlantic Coast Line Railroad Co., 265 F.2d 75, 83 (5th Cir. 1959), rev'd. on other grounds, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960). *See also* New Amsterdam Cas. Co. v. Soileau, 167 F.2d 767 (5th Cir. 1948), cert. denied, 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376 (1948). It would thus seem clear that plaintiff's employment with the AAFES must be viewed as arising from either an express or implied contract, and we hold accordingly.

 Defendant concedes that Pub.L. 91–350 confers jurisdiction over claims concerning exchange type operations founded on contracts. However, defendant argues exchange employee contracts are not the kind of contracts to be covered by the new Act. It maintains that Congress, in determining that jurisdiction should be granted, did not consider whether civilian exchange employees should be permitted to sue for their back pay. Relying on the principle that waivers of sovereign immunity are to be strictly and conservatively construed,[7] the Government argues that the absence of a clear expression of legislative intent to waive immunity against suits by exchange employees is fatal to plaintiff. We find the legislative intent less silent than defendant asserts.

While it is true that no such specific reference can be found, a reading of both the House and Senate Reports accompanying S. 980 clearly reveals that employment cases were considered when both houses spoke of removing a "loophole" [H.R.Rep.No.91–933, 91st Cong., 2d Sess. 2 (1970)] and "filling a gap" [S.Rep. No.268, 91st Cong., 1st Sess. 2 (1969)] in the Tucker Act's waiver of immunity. In both reports, *Kyer, supra; Pulaski Cab Co., supra; Keetz, supra,* and *Borden, supra,* were cited as illustrative of the "loophole" or "gap" to be closed. All four cases relate to claims for pay or personal services as distinguished from claims of supply or construction contractors. We are convinced that correction of the harsh result imposed by the above cases was clearly within the intent of Pub.L. 91–350.

Although this case is one of first impression regarding the effect of Pub.L. 91–350 on exchange activity employee pay cases,[8] we are persuaded that our previous decisions in *Keetz, supra,* and *Gradall, supra,* regarding exchange employees' failure to qualify as Federal employees, coupled with the clear intent of Congress to close the jurisdictional "loophole" in the Tucker Act as it affects exchange employees, mandates denial of defendant's motion to dismiss for want of jurisdiction.

AAFES employee had a contract of employment. We find it a bit ironic that in the instant case, the Government argues just the opposite. We can only assume that this inconsistency has occurred because the enactment of Pub.L 91–350 now grants jurisdiction for exchange contract claims. We held the Government's contract theory in *Keetz* to be correct and see no reason to change in the instant case.

7. King v. United States, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

8. Although this issue was raised in Travis v. United States, 199 Ct.Cl. 67 (1972), we deferred decision on this difficult jurisdictional question since it was clear in *Travis* that plaintiff had no case on the merits. *See Travis, supra,* n. 1 at 70.

We realize that our holding is in conflict with the recent opinion of Judge Wisdom in *Young v. United States,* 498 F.2d 1211 (5th Cir. 1974). The *Young* court held that Public Law 91–350 does not confer jurisdiction under the Tucker Act to hear exchange employee cases. This result was reached by construing the legislative intent as not "extend[ing] Tucker Act jurisdiction to the sort of 'contract' plaintiff asserts existed in this case." *Young, supra,* 498 F.2d at 1217.

The *Young* court viewed the absence of any specific mention of exchange employees in the 1970 amendment as a bar to jurisdiction.[9] The court reasoned that since, on other occasions, Congress had enacted legislation which dealt with exchange employees, in very direct and specific terms, the absence of such language is evidence of an exclusionary intent.

We respectfully differ.

The *Young* court completely overlooked the reference in both the House and Senate reports to cases decided by this court involving exchange employees and the harsh result of our lack of jurisdiction. This specific reference to *Keetz, supra; Pulaski Cab Co., supra; Kyer, supra,* and *Borden, supra,* in our mind, negates any argument that Congress did not intend to cover exchange employee contracts when it enacted Pub.L. 91–350.

 * * * * * *

■ We hold that since plaintiff is not a Federal employee, his relationship with the AAFES is governed by contract principles. Thus, this court, by virtue of the 1970 amendment to the Tucker Act, has jurisdiction to grant a money judgment against the United States for an alleged improper discharge of an employee of a nonappropriated fund exchange type instrumentality.

Accordingly, defendant's motion to dismiss is denied, and the case is remanded to the trial division for decision on the merits.

SKELTON, Judge (dissenting):

I respectfully dissent. This court does not have jurisdiction to hear the merits of this case. The majority would have us take jurisdiction over a type of claim in which the government is immune from suit as sovereign and in which a clear reading of the case law and legislative history of the 1970 amendment to the Tucker Act shows that Congress has not explicitly waived immunity by giving consent to be sued in this kind of case.

The jurisdiction of this court is limited by the Tucker Act to claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * * *" 28 U.S.C. § 1491 (1970). Although this statute might have been interpreted to constitute a waiver of all non-tort money claims, we have limited our jurisdiction to claims in which there exists constitutional or statutory authority mandating Federal compensation either directly or indirectly. *Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599 (1967). With this limitation in mind, we have historically denied jurisdiction to money claims against nonappropriated fund instrumentalities since by their very nature their financial obligations are not obligations of the United States; until the most recent Tucker Act amendment there was no statutory or constitutional authority or mandate for Congress to appropriate funds to pay judgments obtained against nonappropriated fund instrumentalities. *See* Dugan v. United States, 34 Ct.Cl.

9. The court in Young v. United States, 498 F.2d 1211 (5th Cir. 1974) stated:

"Nowhere in the history of the amendments is there any direct reference to the relationship between the instrumentalities and their employees, much less any language that would support an inference that Congress intended

these amendments as a vehicle for redressing grievances of employees of these instrumentalities as well as settling claims of third parties with whom the instrumentalities contract for goods and services."
*Young, supra,* at 1215.

458 (1899); Williams v. United States, 44 Ct.Cl. 175 (1909); Kyle v. United States, 46 Ct.Cl. 197 (1911); Woog v. United States, 48 Ct.Cl. 80 (1913); Kenny v. United States, 62 Ct.Cl. 328 (1926); Sullivan v. United States, 92 Ct.Cl. 154 (1940); Borden v. United States, 116 F.Supp. 873, 126 Ct.Cl. 902 (1953); Pulaski Cab Co. v. United States, 157 F.Supp. 955, 141 Ct.Cl. 160 (1958); Cockrill v. United States, 292 F.2d 288, 155 Ct.Cl. 181 (1961); Gradall v. United States, 329 F.2d 960, 161 Ct.Cl. 714 (1963); Keetz v. United States, 168 Ct.Cl. 205 (1964); Kyer v. United States, 369 F.2d 714, 177 Ct.Cl. 747 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).

The Supreme Court confirmed the financial independence of nonappropriated fund activities when, in Standard Oil Co. v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), it declared the military Exchange Services were federal instrumentalities but limited the implications of this conclusion by stating: "The Government assumes none of the financial obligations of the exchange." 316 U.S. at 485, 62 S.Ct. at 1170. Unfortunately, the maintaining of sovereign immunity over claims against the Exchange Services created the anomalous situation in which an individual under contract with the Federal Government could bring suit in this court to remedy contractual claims while a similar contractor providing the same services with an Exchange Service such as the Army and Air Force Exchange Service (AAFES), could not. We have often noted the unfairness of this situation, stating in one case:

> We are mindful of the fact that the result reached spells an unduly harsh outcome. Plaintiff has searched in vain for a forum in which the merits of his claim might be aired. We add, though perhaps of little comfort, that the lack of jurisdiction which plaintiff has faced at every turn is a matter which sorely needs congressional correction. [Kyer v. United States, 369 F.2d 714, 719, 177 Ct.Cl. 747, 754 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).]

In 1970, the Tucker Act was amended by the Act of July 23, 1970, Pub.L.No. 91–350, 84 Stat. 449, amending, 28 U.S.C. § 1491 (1964), [hereinafter P.L. 91–350] to close this apparent "loophole" by adding the following sentence:

> * * * For the purpose of this paragraph, an express or implied *contract* with the Army and Air Force Exchange Service * * * shall be considered an express or implied contract with the United States. [Emphasis supplied.] [28 U.S.C. § 1491 (1970).]

The majority would have us interpret this amendment so as to provide a waiver of sovereign immunity for all claims against the Exchange Services whether they are based on contract, regulation, or Act of Congress. I believe this is an unwarranted interpretation, and if permitted to stand, it would extend our jurisdiction to cover a vast panoply of claims over which Congress never intended to consent to be sued. The language of the amendment is clear on its face, and, when combined with the prior case law and the legislative history, it is apparent that Congress only intended to extend our jurisdiction to cover contractual claims of third party independent contractors against the Exchange Services and not to AAFES employees' grievances.

In introducing this amendment to the Senate, Senator Tydings described its purpose as follows:

> Mr. President, nonappropriated fund activities are at present an anomaly of the law. When states have attempted to tax or regulate nonappropriated fund activities, these organizations have successfully argued that they are immune from taxation and regulation as instrumentalities of the United States. When sued in foreign courts, nonappropriated fund activities have successfully argued that as instrumentalities of the United States they are not liable to contract suit, except in the courts of the United States. Our own courts have held, and the Justice Department has concurred in such holdings, that employees of nonappro-

priated fund activities, engaged in the performance of their duties, are employees of the United States, so that the United States is liable, under the Federal Tort Claims Act, for their negligence within the scope of their employment. The United States has, in fact, sued in its own name to enforce contracts entered into by nonappropriated fund activities.

Yet, today, although nonappropriated fund activities are continually identified with their parent department or agency of the United States, *contractors with such activities have found the court room door barred when they allege a breach of a contract by such an activity.* State courts have disclaimed jurisdiction to entertain the claims, holding that the federal courts are the appropriate forum. Both the federal district courts and the U.S. Court of Claims afford no relief because of the alleged loophole in the Tucker Act. Repeatedly, these courts have held that the Tucker Act's waiver of the sovereign immunity of the United States to contract suits is not broad enough to permit the Court of Claims or the U.S. District Court to entertain suits against nonappropriated fund activities. [115 Cong.Rec., Part 3, p. 3162 (1969).] [Emphasis supplied.]

In reporting favorably on S. 980, the Sentate bill to amend the Tucker Act, the report of the Senate Judiciary Committee stated:

S. 980 will fill a gap in the Tucker Act's waiver of immunity of the United States to claims *based upon contracts* with departments or agencies of the Government. The United States is liable in the Court of Claims of the United States and, in appropriate cases, in the district courts of the United States, to suits "upon any express or implied contract with the United States * * *." 28 U.S.C. 1491; 28 U.S.C. 1346(a)(2). The courts have repeatedly held, however, that the Federal Government's liability to suit under these sections *only exists*

*with respect to contract obligations* to be paid out of appropriated funds. See, e. g., Kyer v. United States, 369 F.2d 714 [177 Ct.Cl. 747] (Ct.Claims 1966); Pulaski Cab Co. v. United States, 157 F.Supp. 955, [141 Ct.Cl. 160] (Ct.Claims 1968); Keetz v. United States, 168 Ct.Claims 205 (1964); Borden v. United States, 116 F.Supp. 873, [126 Ct.Cl. 902] (Ct.Claims 1953). [S.Rep.No.268, 91st Cong., 1st Sess. 2 (1969)] [Emphasis supplied.]

The House Judiciary Committee also favorably reported the bill and, describing its purpose as closing a "loophole" in the Tucker Act dealing with "claims based upon contracts with departments or agencies of the Government." [2 U.S. Code Cong. & Admin.News, p. 3478 (1970).]

The intention of Congress to close a loophole with respect to contractual claims of third party independent contractors is further substantiated by the floor debate prior to the bill's passage. Speaking for the amendment, Representative Rogers of Colorado stated:

Under the Tucker Act, the United States has waived its sovereign immunity *with respect to contract claims.* However, the construction given to the Tucker Act by the courts has left a loophole, which creates inequities for some claimants. This loophole exists *with respect to contract entered into by those Federal instrumentalities* which operate as nonappropriated fund activities. In short, under present construction of the Tucker Act, a plaintiff with a legitimate claim against a nonappropriated fund activity is not entitled to any judicial relief. S. 980 as reported by the Committee on the Judiciary is intended to close this loophole *with respect to contracts* entered into by post exchange types of operations conducted within the Department of Defense and the National Aeronautics and Space Administration. [116 Cong.Rec., Part 8, 10,604–06 (1970)] [Emphasis supplied.]

Similarly, Representative Fish in commenting on the types of problems that necessitated an amendment stated:

> S. 980, as it passed the other body, would close this loophole in the Tucker Act by permitting the aggrieved party to sue the U.S. Government where the gravamen of the complaint *arises from a contract* with a nonappropriated fund activity. Such activity would then have to reimburse the United States for any judgment paid. [*Id.* at 10,605–06] [Emphasis supplied.]

The legislative history speaks clearly and unambiguously. Public Law 91–350 was intended by Congress to waive sovereign immunity solely over claims of third party independent contractors arising as a result of contracts with nonappropriated fund instrumentalities such as the AAFES. The legislative history is silent concerning claims against the AAFES by employees. No reference is made to the lack of a Court of Claims forum for the resolution of pay claims or other employment grievances for AAFES employees. It seems clear to me that Congress did not intend to provide additional remedies for nonappropriated fund instrumentality employees when it passed Pub.L. 91–350; its only aim was to correct an anomalous situation with respect to those third party independent contractors having explicit contracts with the Exchange Services.

Moreover, it is highly relevant to note that the AAFES, alone, had almost 80,-000 civilian employees in 1970.[1] Certainly, if Congress planned to give such a vast number of individuals, together with thousands more in the four other Exchange Services, a new forum to present their employment grievances or pay claims, some statement would have been made to that effect by the two Judiciary Committee Reports or during the debates. The absence of such comment is, in my judgment, significant since sovereign immunity cannot be waived by implication, King v. United States, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), or implied through the construction of an ambiguous statute, General Mutual Ins. Co. v. United States, 119 F.Supp. 352 (N.D.N.Y.1953) as the majority would have us do. Rather, it must be unequivocally and unambiguously expressed. As the Supreme Court stated:

> * * * We think that this approach runs counter to the settled propositions that the Court of Claims' jurisdiction to grant relief depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and that *such a waiver cannot be implied but must be unequivocally expressed.* United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. * * * [Emphasis supplied.] [King v. United States, at 4, 89 S.Ct. at 1503.]

The majority points to four cases cited by the legislative history, Kyer v. United States, *supra* ; Pulaski Cab Co. v. United States, *supra* ; Keetz v. United States, *supra* ; and Borden v. United States, *supra,* as evidence of a concern Congress had for employment cases. I do not believe that these cases are illustrative of the point the majority is seeking to make. Each of these cases, with the exception of *Keetz, supra,* deals with independent suppliers of goods and services under explicit contract with the Exchange Services, not employees in any traditional sense, and was probably cited in the history merely to show that the doctrine of sovereign immunity stood as a bar against such contractual claims. The last case, *Keetz, supra,* although not involving a contract, is, as I will discuss, based on an incorrect reading of Court of Claims precedent.

Since, as the legislative history seems to indicate, Congress intended the amendment to serve as a waiver of sovereign immunity only over contract

---

1. The five Exchange Services are: Army and Air Force Exchange Service, Navy Exchanges, Marine Corp Exchanges, Coast Guard Exchanges, and Exchange Councils of the National Aeronautics and Space Administration (84 Stat. 449). The record does not show the total number of their employees.

claims of independent third parties against the AAFES or other Exchange Services, we acquire jurisdiction in this case only if the plaintiff had such a contractual relationship with the AAFES. In reviewing the statutory scheme created by Congress and the case law that has developed since the Supreme Court decided in *Standard Oil Co., supra,* that the AAFES is a federal instrumentality, I am drawn to the conclusion that if an employee of an Exchange Service such as the plaintiff is a federal employee, he is such employee for limited purposes only. He is not an employee of the U.S. Army or Air Force, but only of the Exchange Service. His salary is paid out of nonappropriated funds over which this court has no jurisdiction. The following cases hold that such Exchange Service employees are federal employees in various situations: Rizzuto v. United States, 298 F.2d 748, 749–50 (10th Cir. 1961); United States v. Holcombe, 277 F.2d 143 (4th Cir. 1960), aff'g 176 F.Supp. 297, 299–300 (E.D.Va.1959); United States v. Forfari, 268 F.2d 29, 31, 35 (9th Cir. 1959), cert. denied, 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157; Daniels v. Chanute Air Force Base Exchange, 127 F.Supp. 920, 923–24 (E.D.Ill.1955); Bretheauer v. United States, 333 F.2d 302, 304–06 (8th Cir. 1964); and Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958). None of these cases involved claims for wrongful discharge or back pay, but dealt with claims of tort, workmen's compensation, criminal law, etc.

In several contexts Congress has explicitly included Exchange Service employees within the rights and benefits extended to other federal employees. Thus, they are eligible for unemployment compensation benefits under 5 U.S.C. § 8501 (1970) as well as coverage under 5 U.S.C. § 7902 (1970), concerning federal safety programs. Similarly, AAFES employees are governed by the dual compensation provision of 5 U.S.C. § 5531 (1970). Where AAFES employees are not to be considered federal employees, Congress has directly and unambiguously so provided. For example, in 5 U.S.C. § 2105(c) it is declared:

§ 2105. Employee.

\* \* \* \* \* \*

(c) An employee paid from nonappropriated funds of the Army and Air Force Exchange Service, [AAFES] \* \* \* is deemed not an employee [of the United States] for the purpose of—

(1) laws administered by the Civil Service Commission; or

(2) subchapter I of chapter 81 [dealing with compensation for work injuries] and section 7902 of this title [federal safety programs].

The applicable Army/Air Force Regulation is to the same effect as follows:

1–4 Civilian Personnel. a. AAFES personnel are employees of an instrumentality of the United States which is an integral part of the Department of Defense. Since they are compensated out of nonappropriated funds, they are distinguished from other civilian employees of the Armed Services who are compensated from appropriated funds. For example, they are not held or considered as employees of the United States for certain purposes, such as the civil service laws and the Federal Employees Compensation Act (5 U.S.C. 2105). [AR 60–20/AFR 147–14, § 1–4 (Oct. 1968)]

Although excluding AAFES employees from the category of federal employees for the purposes of the Civil Service laws, Congress in § 2105 has clearly not precluded these employees from being federal employees for other purposes.

Similarly, the executive branch of government in certain circumstances groups AAFES employees with federal employees. For example, section 2(b) of Executive Order 11491, setting up a program of labor management relations in the federal service, states that employees of nonappropriated fund instrumentalities are to be included.

Case law similarly points to the conclusion that employees of an Exchange Service are federal employees for limited purposes only. In a long line of cases dealing with the Federal Tort Claims

Act, 28 U.S.C. § 1346 (1970), the federal courts have considered those employed by the Exchange Service to be federal employees as far as tort claims are concerned. *See e. g.,* Rizzuto v. United States, *supra*; United States v. Holcombe, *supra*; United States v. Forfari, *supra*; and Aubrey v. United States, *supra.*

In this court the status of an AAFES employee has been dealt with very infrequently. The latest case considering this question was Keetz v. United States, 168 Ct.Cl. 205 (1964). In *Keetz,* decided before the passage of Pub.L. 91–350, an employee of the AAFES sued here for back salary claiming that the bar in this court against contractual claims with the Exchange Services did not apply since he was a federal employee *and not working pursuant to contract.* Instead, the plaintiff alleged that the gravamen of his complaint was a refusal by the AAFES to comply with regulations due federal employees. This court denied jurisdiction as it had in all the preceding suits involving the AAFES, holding that in "other contexts" the court had held that employees of the AAFES were not federal employees and citing as support Gradall v. United States, 329 F.2d 960, 161 Ct.Cl. 714 (1963) and Brummitt v. United States, 329 F.2d 966, 165 Ct.Cl. 78 (1964). A close reading of those two cases will show that the court erred in relying on them in the *Keetz* case.

In *Gradall, supra,* the issue was whether an AAFES employee was a federal employee within the definition of the Dual Compensation Act. The court's holding that he was not a federal employee was merely dicta inasmuch as the written employment contract which defined the plaintiff's relationship stated in part that "although EUCOM exchange system is an instrumentality of the U.S. Government * * * *you are not considered to be a federal employee.*" [329 F.2d at 963, 161 Ct.Cl. at 718] [Emphasis supplied.] A similar holding in *Brummitt, supra* is likewise only dicta, since this court found that the open mess which employed the plaintiff was at the time in issue neither a federal instrumentality nor a nonappropriated fund activity, but rather a private organization, and, therefore, a fortiori, the plaintiff could not be a federal employee. Because of its reliance on the barest form of dicta and its lack of independent analysis, the *Keetz* case in no way prevents the conclusion that the plaintiff is a federal employee, but only for limited purposes not germane here.

Article 2, Section 2 of the Constitution establishes that the only way one can become a federal officer is through appointment by the President or by the "head of a department" or by one to whom the power of appointment has been delegated. In Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890), the Supreme Court held that even after appointment, a public officer had no vested or contract right in his office. The Court said.

> The primary question in this case, * * * is, whether an officer appointed for a definite time or during good behavior had any vested interest or contract right in his office of which Congress could not deprive him? The question is not novel. There seems to be but little difficulty in deciding that there was no such interest or right. * * * [*Id.* at 104, 10 S.Ct. at 432.]

The Court further stated:

> * * * We have already shown, that the appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the meaning of the section of the Constitution relied on by the plaintiffs in error; do not come within the import of the term *contracts,* or, in other words, the vested, private personal rights thereby intended to be protected. * * * [Emphasis in original.] [*Id.* at 105, 10 S.Ct. at 433.]

Again, in Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900), the Supreme Court repeated its holding of *Crenshaw, supra,* and stated: "In short, generally speaking, the nature of

the relation of a public officer to the public is inconsistent with either a property or a *contract* right." [Emphasis supplied.] [Footnote omitted.] [*Id.* at 577, 20 S.Ct. at 901.]

In Urbina v. United States, 428 F.2d 1280, 1284, 192 Ct.Cl. 875, 881 (1970), we held:

> * * * If, * * * plaintiff's reliance is on some theory of contract law, his position would not be improved since it is plain that public employment does not, in a situation such as is here involved, give rise to a contractual relationship in the conventional sense. Borak v. United States, 78 F.Supp. 123, 110 Ct.Cl. 236, cert denied, 335 U.S. 821 [69 S.Ct. 43, 93 L.Ed. 375] (1948). *Cf.* Lawrenson v. United States, 153 F.Supp. 790, 139 Ct.Cl. 370 (1957) * * *.

*See also,* United States v. Hartwell, 73 U.S. (6 Wall.) 385, 393, 18 L.Ed. 830 (1868).

In my dissent in Testan v. United States, 499 F.2d 690, 205 Ct.Cl. 330 (July 1974) cert. granted, February 18, 1975, a case in which the majority found that plaintiff had an interest in a job position to which he had not been appointed, I summarized the law saying:

> Article 2, Section 2 of the Constitution provides that officers of the United States shall be appointed by the President or the heads of the departments, as Congress may direct. There is no other way a person can obtain a government job. *See* United States v. Smith, 124 U.S. 525 [8 S.Ct. 595, 31 L.Ed. 534] (1888); United States v. Mouat, 124 U.S. 303 [8 S.Ct. 505, 31 L.Ed. 463] (1888); and Thomason v. United States, 85 F.Supp. 742 (N.D. Cal.1948), aff'd, 184 F.2d 105 (9th Cir. 1950). Government employment is not a contract, is not property and the due process clause of the Constitution does not apply. Bailey v. Richardson, *supra* [86 U.S.App.D.C. 248, 182 F.2d 46 (1950), aff'd, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951)]; Crenshaw v. United States, 134 U.S. 99 [10 S.Ct. 431, 33 L.Ed. 825] (1890); Taylor v.

Beckham, 178 U.S. 548 [20 S.Ct. 1009, 44 L.Ed. 1187] (1900), and Jenson v. Olson, *supra* [353 F.2d 825 (8th Cir. 1965)]. Since the plaintiffs were never appointed to these jobs, they had no vested or property rights in them. Consequently when they were not promoted, they were not denied anything that they had a right to. [499 F.2d at 693, 205 Ct.Cl. 330.]

Again, in my dissent in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), I stated:

> We can conclude from the authorities cited above that a government job is not property, *does not involve contract rights,* but does include, tenure, salary and duties. It can only be conferred by appointment as authorized by Congress. Unless a person has been so appointed, he is not in the government employ and is not a public officer. * * * [*Id.* 451 F.2d at 1070, 196 Ct.Cl. at 229.]

I am persuaded by the foregoing authorities that if the plaintiff was a federal employee by reason of his employment by the AAFES, he was such employee for limited purposes only as indicated above and held such employment *by appointment* and *not by a contract* with the Federal Government. Consequently, Pub.L. 91–350 does not apply.

Furthermore, I do not view Pub.L. 91–350 as intending to extend the Tucker Act's waiver of sovereign immunity to include the type of case we have here. A review of the quoted legislative history makes it clear that Congress intended only to remove the existing ban on jurisdiction to hear and decide suits involving contracts entered into by nonappropriated fund instrumentalities for supplies and services other than services of employees, and not as a waiver of sovereign immunity over employment grievances.

In Young v. United States, 498 F.2d 1211 (5th Cir. 1974) the fifth circuit considered a case closely analogous to the instant case before us. The plaintiff in *Young* sought review and back salary for action taken by the AAFES discharging him from his position as an ar-

chitect. He argued, in part, that Pub.L. 91–350 in amending the Tucker Act, 28 U.S.C. § 1346(a)(2) (conferring concurrent jurisdiction on the district court), extended the jurisdiction of the district court to hear his pay case because he had a contract with the Exchange Service. The district court dismissed the suit on the grounds that:

* * * [T]he plaintiff's employment relationship with the Exchange Service did not constitute a contractual relationship that could give rise to an action under the Tucker Act, * *. [*Id.* at 1214.]

The Fifth Circuit Court affirmed this action of the district court, thereby holding that the plaintiff did not have a contract with the Exchange Service.[2] The decision of the majority in the instant case that our plaintiff had a contract with the AAFES is in direct conflict on this point with the decision of the Fifth Circuit Court in the *Young* case. The Fifth Circuit Court, in reviewing the legislative history of Pub.L. 91–350 in the *Young* case, denied that the amendment conferred jurisdiction on the federal courts to hear plaintiff's claim, saying:

* * * In construing the 1970 amendments to the Tucker Act, we cannot ignore the fact that, in the much larger statutory scheme embracing federal employment, Congress has, when it has thought such action appropriate, dealt with Exchange Service employees directly and specifically. In our view, this circumstance, coupled with the dearth of concern with employment relationships in the legislative history of the 1970 amendments, strengthens our conclusion that *those amendments were not intended to extend Tucker Act jurisdiction to the sort of "contract" plaintiff asserts existed in this case.* * * * [498 F.2d at 1217.] [Emphasis supplied.] [Footnote omitted.]

The *Young* case, being "on all fours" with the instant case on the contract

question should stand as clear and convincing precedent for our denial of jurisdiction. Thus, the amendments to the Tucker Act were not intended to waive sovereign immunity over Exchange Service employment grievance cases.

The majority opinion goes against the plain language of the amendment, clear legislative history and convincing case precedent.

In any event, the plaintiff cannot recover under the theory advanced by the majority opinion to the effect that he is "governed by the same rules of law applicable to private employer-employee relationships" which "is contractual in nature." If this is true, the plaintiff could only claim that he had been hired for an indefinite time for personal services. It is well settled in the law applicable to private employer-employee relationships that a hiring of an employee by an employer that is indefinite as to time is not enforceable and is terminable at the will of either party at any time without liability. *See* 1 Williston, Contracts § 39 (1957), where it is stated:

* * * [I]t is generally held that a hiring indefinite as to time is terminable at the will of either party and therefore creates no executory obligations. * * * [Footnote omitted.] [Id. at 119, Third Edition (Jaeger).]

In Atchison, T. & S.F. Ry. v. United States, 211 F.2d 264 (10th Cir. 1954), the court said:

* * * It is the well settled rule that a contract providing solely and exclusively for the rendition of personal services, fixing no period of time during which it shall be in force and effect, and failing to specify that a certain amount of work shall be performed under its terms, is terminable at the will of either party. * * * [Many cases cited.] [*Id.* at 265.]

*See also* Fibreboard Products, Inc. v. Townsend, 202 F.2d 180 (9th Cir. 1953), where the court held:

A contract for permanent employment is only a contract for an indefi-

---

**2.** The district court decision was reversed and plaintiff was granted a new trial on other grounds.

nite period of time and terminable at the will of either party, \* \* \*. [*Id.* at 182.]

This is undoubtedly the general rule governing private employer-employee contractual relationships. Under the theory of the majority, all that the plaintiff had was employment that could be terminated at will by him or the AAFES without liability. The AAFES terminated the employment. The plaintiff has no rights under the Civil Service laws or regulations and by statute no protection under the Lloyd-La Follette Act, 5 U.S.C. § 7501 (1970), which provides that:

§ 7501. Cause; procedure; exception

(a) An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

Therefore, plaintiff has alleged a claim on which relief can be granted. In short, plaintiff has not alleged a cause of action even under the theory of the majority and his petition should be dismissed. *See* Price v. United States, 65 Ct.Cl. 91 (1928), cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001, and Barea v. United States, 115 Ct.Cl. 44 (1949).

In summary, it makes no difference whether plaintiff was a federal employee for limited purposes because of his appointment to a position by the Exchange Service, or whether he was a private employee of the Exchange Service with a private industry employer-employee type contract for personal services for an indefinite period of time, because this court has no jurisdiction to entertain his employment grievance in either case. If he was a federal employee for limited purposes because of his appointment to a position by the Exchange Service, he had no contract and Pub.L. 91–350, *supra,* does not confer jurisdiction on this court to hear his case. If he was a private employee of the Exchange Service and held a private industry type of employment contract for indefinite personal services, as the majority holds, when the Exchange Service terminated his em-

ployment, which it had a right to do without liability, all of his contract rights were also terminated and he has no claim on which relief can be granted. Furthermore, plaintiff's salary was being paid out of nonappropriated funds over which we have no jurisdiction. See the many cases cited above.

In any event, the plaintiff does not have a third party independent contract claim, being the only kind of contract claim as to which Congress waived sovereign immunity to suit when it enacted Pub.L. 91–350. The United States is immune from suit on all other nonappropriated funds claims including that of the plaintiff in this case.

The plaintiff cites Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) in support of his position. That case is clearly inapplicable. The plaintiff there was a regular foreign service officer of the Department of State whose salary was paid out of appropriated funds. The court held that he was improperly discharged because the regulations of the department were not followed. By contrast, the plaintiff in the instant case was not an employee of the Air Force or of the Army whose salary was paid out of appropriated funds, but was an employee of a nonappropriated fund instrumentality and received his pay from nonappropriated funds. The cases are clearly distinguishable.

The plaintiff also cites Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), in support of his claim. That case is of no help to him. The facts are quite different and the cases are easily distinguishable. In that case the plaintiff was an employee of the Department of Interior. He was what is known as a Schedule A employee (*i. e.,* one occupying positions other than those of a confidential or policy-determining character) in the excepted service. *His salary was paid out of appropriated funds.* He had no civil service protected status and could have been discharged summarily without any reasons being given. However, the Secretary dis-

charged him on security reasons invoking department regulations to do so, but he did not follow the regulations. The court held that since the Secretary gratuitously invoked the regulations, he was required to follow them and having failed to do so, the discharge was unauthorized. This is a highly technical point not involved in our case. That case is distinguished from the instant case because there the plaintiff was an employee of the Department of the Interior and his salary was paid out of appropriated funds. Whereas, in our case, the plaintiff was not an employee of any executive department, but was an employee of a nonappropriated fund instrumentality of the government and *his salary was paid out of nonappropriated funds.* The crucial fact is that here plaintiff was paid out of nonappropriated funds. This brings us back to the starting point that prior to the 1970 amendment of the Tucker Act (28 U.S.C. § 1491) it was universally held that courts had no jurisdiction of claims of employees of nonappropriated fund instrumentalities of the government. See cases cited above. In 1970 the Tucker Act was amended giving this court jurisdiction of cases founded upon any express or implied contract with the United States by reason of any such contract with any of the Exchange Services. Therefore, the sole question in this case is whether or not plaintiff had a contract within the meaning of the 1970 amendment. I have already demonstrated that this was not the case whether plaintiff was a federal employee or was a private employee of the Exchange Service. In my opinion, there is no way that plaintiff can bring his claim within the meaning of the 1970 amendment so as to confer jurisdiction on this court to entertain his suit.

For all of the reasons set forth above, the court should either grant defendant's motion and dismiss plaintiff's petition on the ground we do not have jurisdiction of his claim, or, without reaching the jurisdiction issue, dismiss plaintiff's petition because he has not alleged a claim on which relief can be granted, which

was the course we followed in the cases of Travis v. United States, 199 Ct.Cl. 67 (1972); and Monett v. United States, 419 F.2d 434, 436, 190 Ct.Cl. 1, 5 n. 4 (1969), cert. denied, 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970). *See also,* Brooks v. Dewar, 313 U.S. 354, 359–60, 61 S.Ct. 979, 85 L.Ed. 1399 (1941); and Flanigan v. United States, 142 Ct.Cl. 600 (1958).