**Glen P. GRADALL**
v.
**The UNITED STATES.**
No. 4-60.

United States Court of Claims.
May 10, 1963.

---

Thomas H. King, Washington, D. C., for plaintiff. Clifford A. Sheldon, Washington, D. C., on the brief.

Katherine H. Johnson, Alexandria, Va., with whom was John W. Douglas, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

This is an action to recover an amount recouped from plaintiff's retired pay under the limitations on dual compensation of the Economy Act of 1932, as amended. Plaintiff was drawing retirement pay as an Army captain with over 30 years' service, having been employed by the Army Exchange Service and the Air Force Exchange Service.

This court decided on May 9, 1962 that plaintiff as a retired officer was not exempt from the Economy Act of 1932, and further stated, Gradall v. United States, No. 4–60, Ct.Cl. (decided May 9, 1962—slip opinion, p. 5):

> " * * * we are not prepared, on the basis of the record before us, to decide whether employment in the post exchange, a non-appropriated fund activity, constituted holding a civilian office or position under the United States Government within in the meaning of the dual compensation provision of the Economy Act. We will therefore remand this proceeding to a commissioner for receipt of evidence bearing upon this issue."

As a result of an understanding between the parties reached at the pretrial conference, after the submission of all pertinent evidence to the commissioner which is of record, by specific suggestion of the trial commissioner, plaintiff again moved for summary judgment. The facts are not in dispute.

The question presented is whether Congress in enacting section 212(a) of the Economy Act of June 30, 1932, intended that a person who receives civilian compensation for services performed for the Army or Air Force Exchange Service be considered as holding a civilian office or position "under the United States Government."

The Act of June 30, 1932, 47 Stat. 406, provides in pertinent part:

> "Sec. 212(a) After the date of the enactment of this Act, no person holding a civilian office or position,

appointive or elective, under the United States Government or the municipal government of the District of Columbia or under any corporation, the majority of the stock of which is owned by the United States, shall be entitled, during the period of such incumbency, to retired pay from the United States * * * at a rate in excess of an amount which when combined with the annual rate of compensation from such civilian office or position, makes the total rate from both sources more than $3,000; * * * [$10,000 as later amended]."

Involved in the determination of the question presented is not only the legal status of the position, but also the legal status of the employer and of the employee.

The position of the Exchange Service as an "instrumentality" of the Government, when considered for tax exemption purposes, was fully stated in Standard Oil Co. of California v. Johnson, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942):

" * * * post exchanges operate under regulations of the Secretary of War pursuant to federal authority. These regulations and the practices under them establish the relationship between the post exchange and the United States government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined. * * *

"On July 25, 1895, the Secretary of War, under authority of Congressional enactments promulgated regulations providing for the establishment of post exchanges. * * * That the establishment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for au-

thorized War Department regulations have the force of law.

"Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903, Congress has repeatedly made substantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury. * * *

"The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. * * * The government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. * * *

"From all of this, we conclude that post exchanges as now operated are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes. * * * "

It is evident that Congress became concerned that the decision in Standard Oil Co. v. Johnson, supra, holding that Exchanges were *tax exempt instrumentalities* of the United States, might serve as a precedent that the Government might be liable to the employees of these instrumentalities by virtue of the Civil Service Laws or the Federal Employees' Compensation Act. Thereafter, Con-

gress enacted the Act of June 19, 1952, 5 U.S.C. § 150k, which provides:

"Civilian employees, compensated from nonappropriated funds, of the Army * * * Exchange Service, * * * and other instrumentalities of the United States under the jurisdiction of the Armed Forces * * * shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act, * * * *Provided*, That the status of these nonappropriated fund activities as Federal instrumentalities shall not be affected."

Although the Exchange is an "instrumentality" of the United States, its "[c]ivilian employees, compensated from nonappropriated funds" are not employees of the United States "for the purpose of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act." Section 2 of the Act of 1952, supra, requires the nonappropriated fund instrumentalities to provide compensation for death or disability incurred in the course of employment, by insurance or otherwise.

The authorized Army Regulations, which as stated in Standard Oil Co. v. Johnson, supra, "have the force of law," provide:

" * * * The United States is not responsible for contract, tort and compensation claims against the Army and Air Force Exchange Systems and has not waived its immunity from suit on those claims. Any claim arising out of the activities of the A and AFES shall be payable solely from nonappropriated funds." [AR–60–10, AFR 147–7A, Exchange Service, dated August 2, 1960, Section 1(7).]

Plaintiff's contract of employment with the Exchange specifically provided that it did not constitute a contract with the Department of the Army, the Air Force or the United States Government, and that "although EUCOM exchange system is an instrumentality of the U. S. Government * * * you are not considered to be a federal employee."

On the other hand, the Regulations of the Army and Air Force provide:

"78. *Unemployment compensation.* a. *Authority.* Sec. 4(a) of Public Law 767, 83rd Congress, 1 September 1954, added to the Social Security Act, new Title XV, 'Unemployment Compensation for Federal Employees,' extends to all A&AFES civilian employees unemployment benefits under conditions set forth by the State in which they last worked. * * * *" [AR–60–21, AFR–147–15]

This regulation is in accord with the statutory provisions for unemployment compensation for Federal employees. 42 U.S.C. § 1361:

"§ 1361. Definitions. When used in this subchapter—(a) The term 'Federal service' means any service performed after 1952 in the employ of the United States or any instrumentality thereof which is wholly owned by the United States, * * * *."

This definition of Federal service is expressly limited by the prefatory statement "When used in this subchapter" which clearly confines its meaning to the Unemployment Insurance Act. Accordingly it cannot be extended to include a position "under the United States Government" as provided in the Economy Act of 1932.

█ A civilian employee of a nonappropriated fund instrumentality of the United States, injured in the course of his employment, cannot recover damages from the Government, under the Federal Tort Claims Act or the Federal Employees' Compensation Act. His exclusive remedy is against the instrumentality, and its insurer, under the Act of 1952, supra, as amended. Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (C.A.D.C.1958); Denenberg v. United States, Ct.Cl.1962, 305 F.2d 378.

■ Although the Exchange is an "instrumentality" of the United States, it has no power to bind the United States by contract, and the Government is not liable under contracts of the Exchange with third parties. Pulaski Cab Co. v. United States, 157 F.Supp. 955, 141 Ct. Cl. 160. In holding that the United States was not liable under the contract of this instrumentality with a taxicab company, this court said (157 F.Supp. p. 958, 141 Ct.Cl. p. 165):

" * * * It could hardly be thought that the United States is responsible for liabilities of the United Service Organizations or the Red Cross, however essential may be their contribution to the performance of governmental functions. Because the operation of Post Exchanges is 'deemed essential' for governmental operation, it does not follow that the Government is any more liable for their contracts than they would be for a privately staffed agency that performed under contract the same functions."

The court pointed out that the contract by the Exchange included a specific exclusion of Governmental liability, as required under Army Regulations, and added (157 F.Supp. p. 957, 141 Ct.Cl. p. 163):

" * * * This position follows naturally from the fact that the operation of the Post Exchanges is carried on from nonappropriated funds."

The foregoing analysis can be summarized as follows:

1. The Exchange is a tax exempt nonappropriated fund instrumentality of the United States Government.

2. The United States is not liable in tort for acts of the Exchange or its employees.

3. The United States is not liable on contracts of the Exchange, including contracts with Exchange employees.

4. The employees of the Exchange are not "employees" of the Government, under any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act.

5. The employees of the Exchange are "Federal Employees" for the purpose of extending to them the statutory provisions of unemployment compensation for Federal employees.

The trend of the pertinent decisions, statutes and regulations has generally been to establish that employees of Exchanges are not Federal employees, except for the purpose of unemployment compensation. However, this trend does not supply a definitive answer to what is meant by holding a position "under the United States Government" under the Act of 1932. The Government contends that the logical and reasonable test is whether the services performed in the position constitute "Federal service" because performed for a Federal instrumentality, and not whether the person who holds the position is compensated by appropriated or nonappropriated funds. To accept this test as determinative merely because plaintiff performed services for a Federal instrumentality would be to accept an unrealistic and nebulous view of the actual "position" of both plaintiff and the instrumentality. For example, the American Red Cross, the United Service Organizations, the national banks, and several other institutions are "instrumentalities" of the Government. However, their employees are not subject to the dual compensation restrictions of the Act of 1932. No one has ever contended that they hold a position "under the United States Government" under the Act.

The legislative history of this statute is more enlightening than the other statutes and decisions that have considered the relative status of the Exchanges, the employees, and the Government.

Section 212(a) of the Economy Act of 1932 was part of a legislative appropriation bill for the fiscal year 1933. It was

approved June 30, 1932, 47 Stat. 382. The bill and its legislative history reveal that Congress was primarily concerned in 1932 with keeping expenditures for Government employment within the limit of the funds appropriated during fiscal 1933—a depression period. From section 201 through 216 of the Act, the purpose of the Congress to curtail expenditures from appropriated funds in Government employment is clearly apparent. This was accomplished by suspension of automatic pay increases and promotions for Federal employees, retirement deductions, reductions in travel allowances and overtime pay, reduction in annual leave and additional authority to furlough employees, and other measures adopted to keep Government employment expenditures within the appropriations made for the fiscal year 1933. The intended meaning of holding a position "under the United States Government" in section 212(a) must be found within the entire context and purpose of the bill.

The Director of the Bureau of the Budget testified before The Senate Committee on Appropriations, and one of his proposals was specific as to the purpose of section 212(a) as finally enacted: [1]

"Limitation on retirement pay. This would provide that retired officers who hold *civilian positions* could not draw retirement pay beyond the point which would bring the *total compensation received from the Government* for the civilian position and the retirement pay to more than $3,000.00 per year * * *. [Emphasis supplied.]

"But, it would mean an annual saving in each individual case." [2]

In 1955, the $3,000 limitation was raised to $10,000 in H.R. 5893. The House Report on this bill stated, in part:

" * * * As can be readily seen from the tables reproduced below, the existing limitation of $3,000 virtually bars a retired man or wom-

an *from employment with the Government* and in many cases it means the loss of valuable skills which could and should be utilized." [Emphasis supplied.] [U.S. Congressional and Administrative News, 84th Cong., 1st Sess., 1955, p. 2675.]

The clear intent of the Congress in the enactment of the Act of 1932 was to keep Government employment expenditures within the limitation of appropriations. Section 212(a) would accomplish this purpose if the retirement pay and the salary of the position "under the United States Government" were both paid out of the Federal Treasury from appropriated funds. In 1955, there is again evidence that in referring to a position "under the United States Government" the Congress clearly intended this to mean "employment with the Government," and not with a nonappropriated fund instrumentality for which the Government was in no way financially responsible.

The legislative history of the Act of 1932 clearly demonstrates that in considering section 212(a), the Congress intended that this section and every other section of the Act were to include only such Government activities and expenditures of the type which would be germane to an appropriation bill. When the Congress restricted dual compensation in the Economy Act, it meant to include only persons like those paid by the Government from appropriated Federal funds for services performed in positions "under the United States Government."

We conclude that plaintiff's employment in the Army Exchange Service and the Air Force Exchange Service, a Federal nonappropriated fund instrumentality, did not constitute holding a civilian office or position under the United States Government within the meaning of the dual compensation provision, section 212(a) of the Economy Act of 1932.

1. Senate hearings on H.R. 11267, p. 69, item 9.

2. Senate hearings on H.R. 11267, p. 79.

Plaintiff's motion for summary judgment is granted. Plaintiff therefore is entitled to recover, and judgment is granted to that effect, with the amount of recovery to be determined pursuant to Rule 38(c).