Dukfee, Judge,
delivered the opinion of the court:
Plaintiff in this case, who was retired from the United States Army in the grade of colonel on October 31, 1946, is suing to recover a sum of money that was withheld from his retired pay in 1954 because of an alleged violation of the dual compensation law of June 30, 1932, as amended (5 U.S.C. 1946 ed. § 59a), during the period between November 1,1946 and December 15,1951. During the period mentioned, plaintiff, in addition to receiving his retired pay from the Army, also received a salary from the Fort Sam Houston Golf Club *754 of San Antonio, Texas, by which he was employed to serve as manager of the club.
The legal question involved in the case is whether plaintiff’s position as manager of the Fort Sam Houston Golf Club was a position “under the United States Government,” so as to bring plaintiff’s employment by the club within the coverage of the dual compensation law.
The Fort Sam Houston Golf Club was established and maintained under the provisions of Army Eegulations 210-60 relating to Post messes and clubs at posts, camps and stations. It was a nonappropriated fund instrumentality of the United States with the same legal status as the Army Exchange Service and the Air Force Exchange Service considered in Gradall v. United States, decided this same day by this court, ante, p. 714, in which the same legal question is involved.
We find no material difference in the facts in these two cases as to the legal status of plaintiff’s position. Accordingly, we conclude that plaintiff’s position with the Fort Sam Houston Golf Club was not a position “under the United States Government” so as to bring plaintiff’s employment by the club within the coverage of the dual compensation law, section 212(a) of the Economy Act of June 30, 1932, as amended.
Plaintiff is entitled to recover, and judgment is entered to that effect, with the amount of recovery to be determined pursuant to Rule 38 (c).
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:

Introductory Statement

The plaintiff in this case, who was retired from the United States Army in the grade of colonel on October 31, 1946, is suing to recover a sum of money that was withheld from his retired pay in 1954 because of an alleged violation of the dual compensation law of June 30, 1932, as amended *755 (5 U.S.C., 1946 ed., 59a) during the period between November 1,1946, and December 15,1951. During the period mentioned, the plaintiff, in addition to receiving his retired pay from the Army, also received a salary from the Fort Sam Houston Golf Club of San Antonio, Texas, by which he was employed to serve as manager of the club.
The legal question involved in the case is whether the plaintiff’s position as manager of the Fort Sam Houston Golf Club was a position “under the United States Government,” so as to bring the plaintiff’s employment by the club within the coverage of the dual compensation law.
FINDINGS OF FACT
1. The plaintiff is a citizen of the United States and a resident of San Antonio, Texas.
2. On October 31, 1946, the plaintiff was retired from the United States Army in the grade of colonel for physical disability incurred in the line of duty. At the time of his retirement, the plaintiff had over 30 years’ service for pay purposes.
3. The plaintiff was employed as manager by the Fort Sam Houston Golf Club of San Antonio, Texas, a nonap-propriated fund activity of the United States Army, from November 1,1946, to December 15,1951. He received a total of $16,050 as salary from the club during this period of employment.
4. By a letter dated April 5, 1954, the Comptroller General of the United States notified the plaintiff that the receipt of both retired pay and the $16,050 referred to in finding 3 was prohibited by Section 212 of the Act of June 30,1932 (47 Stat. 382, 406), as amended by Section 3 of the Act of July 15, 1940 (54 Stat. 760, 761); and the plaintiff was requested to pay $16,050 to the Treasurer of the United States.
5. On July 1, 1954, the plaintiff elected under Section 411 of the Career Compensation Act of 1949 (63 Stat. 802, 823) to receive disability retirement pay as prescribed in Title IV of that act on the basis of 75 percent of the basic pay of a colonel with over 30 years’ service. Such election normally was effective as of October 1,1949.
*756 6. By a letter dated August 2, 1954, the Army Finance Center advised the plaintiff that, commencing with August 1954, he would be paid retired pay in conformity with his election under Section 411 of the Career Compensation Act of 1949. The plaintiff was also advised that he was entitled to a credit in the amount of $3,622.64, representing additional retired pay retroactive to December 16, 1951, but that such amount would be withheld as a set-off toward his indebtedness to the United States in the amount of $16,050.
7. On August 9, 1955, Private Law 423, 84th Congress, was enacted for the relief of the plaintiff (69 Stat. A144). This act provided as follows:
That, except as hereinafter provided, McFarland Cockrill, colonel, United States Army, retired, 04938, be, and he is hereby, relieved of any and all liability to the United States for any amounts paid to him as salary by the Fort Sam Houston Golf Club, a nonappropriatea fund activity of the Army, and any amounts paid to him as retired pay from the United States Army, during the period beginning November 1, 1946, and ending December 15,1951, both dates inclusive: Provided, however, That any sums heretofore withheld from the retired pay of Colonel Cockrill shall be retained by the United States.
Sec. 2. In the audit and settlement of the accounts of any certifying or disbursing officer of the United States, full credit shall be given for all payments of salary from the Fort Sam Houston Golf Club and retired pay made to the said McFarland Cockrill during the period beginning November 1,1946, and ending December 15,1951, both dates inclusive.
8. The sum of $3,622.64 referred to in finding 6 has never been paid to the plaintiff.
9. The Fort Sam Houston Golf Club was established and maintained under the provisions of Army Regulations 210-60.
10. As of November 1, 1946, when the plaintiff was first employed by the Fort Sam Houston Golf Club, Army Regulations 210-60 related to the establishment and maintenance of post messes at posts, camps, and stations, and provided in part as follows:
*757 1. Designation. — The messes established, maintained, and operated under the provisions of these regulations will be known as post messes.
2. Government agencies. — Post messes are established, maintained, and operated for the purpose of providing for the subsistence, welfare, good order, and discipline of the Army, and, accordingly, are classed as Government agencies.
3. Authorization. — a. The commanding officer of a post, camp, station, or installation, when such action is in the interest of the service, may establish, maintain, and operate thereat a mess, or messes, each to be operated either on the cooperative plan or by a civilian caterer. If there is an Army exchange at the installation, the commanding officer may, if he so desires, place the operation of such mess or messes under the management and control of the exchange. Where post messes are established, they will be financed through the establishment of appropriate post mess funds administered in accordance with AK 210-50. Post messes may be established for any one or more of the following-named classes of persons, viz:
(1) Commissioned officers.
(2) Warrant officers.
(3) Aviation cadets.
(4) Noncommissioned officers.
(5) Other enlisted men.
(6) Civilian employees.

4. Mess officer, general. — Each post mess will be under the direct charge and supervision of a commissioned officer, who shall be known as mess officer. Two or more such messes may be under charge of the same officer. Mess officers will be detailed by the commanding officer of the post, camp, or station, except that the mess officer for an officers’ mess which is operated on the cooperative plan may be elected by the members thereof.
« * $ # *
6. Furnishing lists of members. — a. The officer in charge of each post mess will, on the first day of each month, prepare a list of the members thereof. The lists of commissioned, warrant, and enlisted members will be furnished to the commanding officer of the post, camp, or station. The lists of civnian members will be furnished to the officers under whom they are respectively employed.
# & * *
*758 8. Indebtedness to post messes. — a. Members of post messes will be called upon to pay, and will pay, their mess indebtedness promptly at the end of the month in which such indebtedness was incurred, or, if they leave the mess, prior to their departure therefrom.
b. On or before the 10th of each month, the mess officer in charge of each mess will report to the commanding officer the names of all members of the mess who have not paid their mess indebtedness for the preceding month, and the commanding officer will take the necessary action to cause such indebtedness to be paid by the members in person or to cause the amounts to be deducted by the finance officer from any pay due or to become due such members.
g. When a member of a post mess is about to leave it, he will promptly inform the mess officer of his proposed departure, and will be furnished by the latter with a statement of his indebtedness, if any, to the mess.
d. When a member of a post mess is transferred to another station, and his indebtedness to the mess is not discharged prior to his departure, the commanding officer of his new station will be advised, and collection will be made as prescribed in b above.
e. When a member of a post mess is discharged from the service, he will be required to discharge all indebtedness to the mess prior to final payment, or have same deducted from any pay that may be due him from the Government.
/. In no case will a civilian member of a post mess be permitted to contract indebtedness therewith in an amount greater than the charge for board for one person for one month, except when otherwise ordered by the commanding officer.
g. Amounts deducted from the pay of members of post messes to cover indebtedness to such messes will be disposed of by finance officers in the same manner as are collections made for post exchanges.
* * * 4c *
11. Under the date of April 3, 1947, a new edition of Army Regulations 210-60 was issued by the War Department. The new edition of the regulations covered the subject of officers’ and noncommissioned officers’ clubs, messes, and similar associations at posts, camps, and stations. The regulations provided in part as follows:
3. Definition1. — a. Officers’ and noncommissioned officers’ clubs and messes as adjuncts of the Army at post *759 level provide certain services essentially for the convenience, recreation, and social welfare of the officers, warrant officers, and noncommissioned officers and their families stationed thereat. Clubs and messes may include such branches and departments as are necessary to conduct and control properly the activities authorized. Officer and noncommissioned officer club and mess funds are sundry funds as defined in AN 210-50, which together with these regulations will govern club and mess operations.
$ $ $ $ &
4. Establishment. — a. Under the authority contained in these regulations post, camp, station, or installation commanders, with the approval of the commanding general of the appropriate major command, may authorize the establishment of a post officers’ or noncommissioned officers’ club when such action is in the interest of the service.
H: sj* ❖ ❖ &
6. Funds for establishment. — When the post or installation commander determines that the establishment of such a club is in the interest of the service, he will fix the amount of necessary capital, including funds necessary for the purchase of equipment and for initial operations. Such capital may be obtained, with the approval of the commanding general of the appropriate command, from the Army Club and Mess Fund (for class I and II installations) or the Air Forces Club and Mess Fund (for class III installations), by borrowing from any other appropriate source approved by the commanding general of the appropriate command, or by deposits, or by contributions; provided that arrangements are made for the prompt repayment of loans from the revenues of the club; all contributions are accepted only as gifts to the club; and that deposits and contributions are accepted with the express condition that no person making a deposit or contribution shall thereby acquire or own any funds or property of the club or possess any enforceable right or interest in any fund or property of the club; provided that, so long as the financial condition of the club warrants, the post commander may provide by general regulation for the refund of any deposit in whole or in part, without any accretion whatever, at the termination of such member’s participation in the club.

*760 8. Legal status. — Clubs governed by these regulations are integral parts of the Military Establishment, are wholly owned Government instrumentalities, and are entitled to the immunities and privileges of such in-strumentalities except as otherwise directed by the War Department.
9. Membership. — a. Membership in a post officers’ or noncommissioned officers’ club will be on a voluntary basis.
b. Within their respective clubs, the right of full membership, either permanent or temporary, will be extended to all officers, warrant officers, and noncommis-sioned officers on duty at the post, including the right equally with any and all other members thereof to participate in the management thereof, to hold office therein, and to vote upon any and all of the affairs thereof in which the officers, warrant officers, and noncommissioned officers concerned have an interest.
* * * * st:
10. Club buildings and utilities. — a. At posts, camps, stations, or installations where club buildings have not been provided from funds made available by the War Department, the post commander will set apart for the use of a post officers’ or noncommissioned officers’ club any suitable buildings available.
b. Buildings occupied by such clubs will be maintained by the post engineer out of funds applicable to the maintenance and operation of buildings, structures, and utilities on the particular post, camp, station, or installation.
g. Fuel, water, and electric services in sufficient quantities to satisfy normal needs for lighting, space heating, drinking, and sanitation, including suitable apparatus therefor, will be supplied at Government expense to post officers’ and noncommissioned officers’ clubs.
* £ * 3: #
13. Post commander. — a. The post, camp, station, or installation commander, under the supervision of the commanding general of the appropriate command, has complete jurisdiction over, and is responsible for the establishment, operation, and dissolution of post officers’ and noncommissioned officers’ clubs.
b. He will approve or disapprove minutes of meetings of boards of governors.
o. Quarterly, or more frequently if directed by higher authority, the post commander will appoint disinter *761 ested officers and noncommissioner [sic] officers from among the active membership of their respective clubs, but who are not serving as the secretary or on the board of governors thereof, to make a check of the inventory at the time when it is regularly taken.
‡ ‡ $
14. Board of governors. — a. The affairs of a post officers’ or noncommissioned officers’ club will be conducted by a board of governors consisting of from 3 to 11 officers or noncommissioned officers elected annually from and by the active membership of the club.
# $ ‡ &
15. Secretary. — a. The secretary will be an officer or noncommissioned officer appointed from the active membership of the club, and will hold office as prescribed by the board of governors with the approval of the post commander.
$ $ ‡ ‡ ‡
o. Club funds are entrusted to personnel of the Army in their official capacity and their misapplication is punishable under the Articles of War. The lending of club funds is prohibited.
$ * $ * #
17. Revenues. — a. The revenues of the club will consist of—
(1) Assessments and monthly dues paid by members.
(2) Net income from revenue-producing activities, such as feeding or housing. Income derived from or funds pertaining to branches of a post club established for the messing of military personnel on a scheduled basis as distinguished from a club restaurant or dining room will not be utilized for any other purpose.
(3) Interest on investments and bank accounts.
(4) Grants from the Army Club and Mess Fund or Air Forces Club and Mess Fund.
(5) Proceeds from sales of surplus club property.
&. Contributions or donations will be subject to the provisions of AR 210-50.
* $ * $ $
20. Activities. — a. Within its resources, a club may provide such facilities, equipment, or services, and conduct such recreation and social activities for its members as are deemed necessary and proper by the board of governors and approved by the post commander and are not otherwise prohibited by War Department direc *762 tives. Examples of authorized facilities, services, and activities are — ■
* * * * *
(11) Golf course.
* # ❖ * *
28. Contracts. — a. Under the provision of these regulations the secretary is the contracting party for the club, and he is authorized to execute contracts obligating the club.
*****
/. Club contracts are solely the obligation of the club. They are not Government contracts and the distinction between club contracts and Government contracts will be observed and clearly indicated at all times.
*****
12. As of December 22, 1949, the use of the term “club” in Army Eegulations 210-60 was discontinued and the word “mess” was substituted for it.
13. Another edition of Army Eegulations 210-60 was issued by the Department of the Army under the date of July 20, 1951. The term “open mess” was substituted for the word “mess” theretofore used in the regulations. However, no changes of major significance were made in the substance of the provisions quoted in finding 11, although there were some modifications of phraseology and a rearrangement of paragraph numbers.
14. No further changes were made in Army Eegulations 210-60 during the period of the plaintiff’s employment by the Fort Sam Houston Golf Club.
CONCLUSION OK LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment is entered to that effect, with the amount of recovery to be determined pursuant to Eule 38 (c).
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on September 13,1963, that judgment for the plaintiff be entered for $6,569.18.