**John M. DENKLER, et al.**

v.

**The UNITED STATES.**

**No. 152–84C.**

United States Claims Court.

April 11, 1986.

Earl J. Silbert, Washington, D.C., attorney of record for plaintiffs. Charles B.

Wayne and Schwalb, Donnenfeld, Bray & Silbert, of counsel.

Robert G. Giertz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard for defendant.

## ORDER FOR ENTRY OF JUDGEMENT

HARKINS, Judge:

On April 19, 1985, defendant's motion for summary judgment was allowed, plaintiffs' cross-motion summary judgment was denied and plaintiffs' claims to recover money withheld from the retirement pay of regular Army and Navy officers during periods they were employed by the Federal Reserve Board (FRB) were dismissed. On appeal by plaintiffs, the United States Court of Appeals for the Federal Circuit on January 28, 1986, reversed. The case was remanded with direction to enter judgment for plaintiffs and for determination of the damages due and owing plaintiffs, subject to the statute of limitations if it had run on any portion of their claims. *Denkler v. United States*, 782 F.2d 1003 (Fed.Cir. 1986). Pursuant to the mandate, the April 19, 1985, judgment dismissing plaintiffs' claims was vacated on February 25, 1986.

On April 9, 1986, the parties filed a stipulation concerning the damages plaintiffs were entitled to recover. Of the sums withheld from plaintiffs' retired pay, plaintiff Robert E. Frazier has been paid the sum of $41,615.13 (less withholding). The other plaintiffs have not been paid.

The April 19, 1985, decision of this court that dismissed plaintiffs' claims was not published in the United States Claims Court Reporter and, accordingly, is not generally available to the bar. The decision of the United States Court of Appeals for the Federal Circuit is an important construction of the Dual Compensation Act in its application to retired regular Army and Navy officers. In order to complete the information that bears upon consideration of plaintiffs' claims and so that the coverage of the Dual Compensation Act may be more clearly defined, the April 19, 1985, decision is included as an attachment to this order.

Plaintiffs prevail on their claims in this case. In accordance with the stipulation of the parties, the clerk is directed to enter judgment for plaintiffs in the following amounts:

| | |
|---|---|
| John M. Denkler | $73,576.32 |
| Robert E. Frazier | -0- |
| S. David Frost | 118,631.93 |
| Thomas T. Jones | 50,385.65 |

Plaintiffs shall recover their costs.

## ATTACHMENT
### April 19, 1985.
### ORDER

HARKINS, Judge:

This case comes before the court on cross-motions for summary judgment on claims to recover money withheld from the retirement pay of regular Army and Navy officers during periods they were employed by the Federal Reserve Board (FRB). The material facts are not in dispute and summary judgment is appropriate. Oral argument was heard on April 17, 1985, after which the parties were advised that defendant would prevail on its motion.

Plaintiffs are retired career officers of the United States armed forces who are, or who in the past have been, employed by the FRB. Each of the plaintiffs, after military service of 25 years or more, satisfied the statutory requirements for entitlement to retirement pay from their respective Services. For their employment at the FRB, plaintiffs received the full pay for the FRB positions they occupied. Application of the Dual Compensation Act of 1964 (DCA) (5 U.S.C. §§ 5531–37 (1982)) resulted in a withholding by their respective Services of varying amounts of retirement pay. Relevant chronology is as follows:

| Plaintiff | Retirement & Service | Employed at FRB | Withholding Commenced |
|---|---|---|---|
| John M. Denkler | 1/31/73 Navy | 2/5/73 | 2/5/73 |
| Robert E. Frazier | 9/1/80 Army | 6/30/80 | 6/24/81 |
| S. David Frost | 4/1/83 Navy | 5/1/83 | Shortly after 5/1/83 |
| Thomas T. Jones | 2/29/70 Army | March 1970 | March 1970 |

John M. Denkler, on retirement from the Navy as a Captain, became entitled to retirement pay of $1,546.88 a month. Cost-of-living adjustments have increased that amount to $3,728.33. During his service at the FRB, in positions of Communications Planning Coordinator and Staff Director, the Navy Finance Center pursuant to the DCA reduced his retirement pay. Since March 1983, in a position at the Federal Reserve Bank in Richmond, Virginia, he has received full retirement pay. His claim is for $126,666.11, withheld from his retirement pay while at the FRB.

Robert E. Frazier, on retirement from the Army as a Lieutenant Colonel, became eligible for retirement pay at the monthly rate of $1,785.81. Cost-of-living adjustments have increased the monthly rate to $2,093.47. During his employment at the FRB he served in the position of Director of the Division of Support Services. After about 1 year at the Board, the U.S. Army Finance and Accounting Center determined that DCA restrictions applied, and on June 24, 1981, notified him that his retirement pay would be reduced. On his request, the Army Finance and Accounting Center reconsidered and, in December 1981, reversed its prior decision and restored full retired pay. Subsequently, the Center on March 24, 1983, reopened the issue and submitted to the Comptroller General the question of whether FRB employees were exempt from the provisions of the DCA.

On December 16, 1983, the Comptroller General decided that Frazier was subject to reductions in military retired pay under DCA restrictions, and that he had received erroneous overpayments of military retired pay from September 1, 1980, through March 31, 1983. Subsequently, the Army Finance and Accounting Center notified Frazier he owed the United States $36,486.30. Frazier seeks relief from this indebtedness, and claims $24,698 for withholdings between April 1, 1983, and August 1, 1984, and an award for reductions that continue to be made.

S. David Frost, on retirement from the Navy as a Rear Admiral, became entitled to retirement pay at a monthly rate of $3,897.36. At the FRB, in the position of Staff Director for Management, the Navy Finance Center applied the DCA and withheld his entire retirement pay. Frost claims $58,460.40 for amounts withheld as of August 1, 1984, and for an award for withholdings that continue to be made.

Thomas T. Jones, on retirement from the Army in the rank of Colonel became eligible for retirement pay at a monthly rate of $912. Cost-of-living adjustments have increased this amount to $2,360. At the FRB, in the position of Management Systems Analyst, the Army Finance and Accounting Center has reduced his retirement payment since March 1970. At oral argument, counsel announced that Jones now has retired from the FRB. Jones claims $102,800 for withholdings to August 1, 1984, and an award for subsequent withholdings.

The 1964 DCA represents the most recent effort by the Congress to deal with the problems that arise when federal employees exploit the opportunity to obtain privileges and benefits that may be found in the interstices of the federal statutory fabric. In 1964, in the DCA, Congress intended to simplify and consolidate previous dual compensation laws, regulations and administrative interpretations. *Puglisi v. United States*, 564 F.2d 403, 215 Ct.Cl. 86, (1977). The Court of Claims examined the 1964 DCA in *Puglisi* and upheld as constitutional its disparate treatment of retired regular officers and retired reserve officers.

In its opinion, the Court of Claims set forth a brief history of the dual compensation legislation, which in various forms dates back to 1839. Over the years, Congress has provided different procedures to deal with different problems as they arose. The congressional effort first was to prevent a person that held a job setting definite compensation from receiving extra pay for additional services which should have been part of his regular duties; later, Congress enacted legislation with objectives to prevent abuse by officers using their mili-

tary positions to obtain lucrative civil service jobs on retirement and to limit the total compensation receivable by any one person from the Government. In 1932, Congress was concerned with keeping expenditures for Government employment within the limit of funds appropriated during fiscal year 1933, a depression period.

In *Puglisi*, the Court of Claims found that the 1964 DCA was more than a mere replication of the Economy Act of 1932. The court held that one obvious purpose of the 1964 DCA, and of the predecessor legislation, was in general to put a ceiling on the amount of compensation certain classes of individuals can receive from the federal government. 564 F.2d at 409.

In the December 16, 1983, decision on the claim of Robert E. Frazier, the Comptroller General concluded that coverage of the 1964 Act was general throughout government positions and that it should not be construed as having application only to employment for which compensation is paid from appropriated funds. The Senate Report states that the Act was intended to cover employment in any civilian office or position in the Government of the United States, or in the municipal government of the District of Columbia, whether appointive, elective, under a personal service contract, or otherwise. S.Rep. No. 935, 88th Cong., 2d Sess. *reprinted in* 1964 U.S.Code Cong. & Ad.News 2834, 2837.

In the 1964 DCA, Congress drafted broad language that was intended to reach all of the objectives sought in previous legislation and to deal with the problems of concern in the dual compensation statutes in whatever form they might appear. The definition of a covered "position" employs parenthetical provisions that make clear the intent to reach all federal employment. 5 U.S.C. § 5531(2) provides:

(2) "position" means a civilian office or position (including a temporary, part-time, or intermittent position), appointive or elective, in the legislative, executive, or judicial branch of the Government of the United States (including a Government corporation and a non-appropriated fund instrumentality under the jurisdiction of the armed forces) or in the government of the District of Columbia;

As defined, the term "position" includes the positions occupied by plaintiffs at the FRB. The FRB is part of an organization that Congress created in 1913 to function as the nation's central bank. The FRB is at the apex of that organization and its prime function involves the formulation of monetary policy. The Board has broad supervisory and regulatory responsibilities over the operations of the organization's 12 Federal Reserve Banks, and over the activities of the multitude of commercial banks that participate with the organization.

The FRB is an agency of the Federal Government. It consists of seven members appointed by the President of the United States and confirmed by the U.S. Senate. Board members are appointed for terms of 14 years, and their terms are so arranged that one expires every 2 years. A member may not be reappointed after having served a full term. The Chairman and Vice Chairman of the Board are named by the President of the United States from among the Board members for 4-year terms and may be redesignated.

The FRB submits an annual report to the Congress, and it makes available detailed statistics and other information relating to the System's activities through a variety of publications. Expenses incurred by the Board in carrying out its duties are not defrayed out of appropriated funds but are paid out of assessments upon the Reserve Banks. Each year a public accounting firm of national prominence audits the Board's accounts.

Withholdings by the Services from plaintiffs' retired pay were made under the provisions of 5 U.S.C. § 5532(b). That section applies to any retired regular officer who holds a "position". It assures that the officer is entitled to full pay of that position, but, during the period for which he receives pay in that position, his retired pay is to be reduced. Section 5532(b) is designed around the fact of payment; it is not concerned with the source of funds

from which the payment is made. Where the retired officer is paid by personnel of the federal instrumentality for services provided to the Federal Government, the procedures authorized in the section apply. 5 U.S.C. § 5532(b) provides:

(b) A retired officer of a regular component of a uniformed service who holds a position is entitled to receive the full pay of the position, but during the period for which he receives pay, his retired or retainer pay shall be reduced to an annual rate equal to the first $2,000 of the retired or retainer pay plus one-half of the remainder, if any. In the operation of the formula for the reduction of retired or retainer pay under this subsection, the amount of $2,000 shall be increased, from time to time, by appropriate percentage, in direct proportion to each increase in retired or retainer pay under section 1401a(b) of title 10 to reflect changes in the Consumer Price Index.

Plaintiffs contend that the term "position", as defined, does not include federal civilian positions at the FRB because they are not funded with monies appropriated by Congress from the United States Treasury. Plaintiffs emphasize that all of the salary for each of the positions they occupy was paid from assessments levied by the FRB on Federal Reserve Banks. With respect to those funds, Congress specifically has ruled they were not "to be construed to be Government funds or appropriated monies." 12 U.S.C. § 244 (1982).

Further, plaintiffs argue Congress did not intend to include the FRB, or any other non-military nonappropriated fund instrumentality, to be included in the "position". The parenthetical clause in the definition— "including a Government corporation and a non-appropriated fund instrumentality under the jurisdiction of the armed forces"— according to plaintiffs indicates Congress' intent to exclude from the Act's coverage individuals in positions that are paid from any nonappropriated fund instrumentality which is not under the jurisdiction of the armed forces.

Plaintiffs cite the canon of statutory construction: *expressio unius est exclusio alterius*. The phrase "under the jurisdiction of the armed forces" is read as if it restricted the coverage of "nonappropriated fund instrumentality." Plaintiffs misapply this canon of construction. In section 5531(2), Congress utilized parenthetical provisions to enlarge the scope of the term's coverage and to make it clear that classifications that otherwise might be questionable were covered. The second parenthetical provision was designed particularly to make sure that nonappropriated fund instrumentalities were included, even those under the jurisdiction of the armed forces that the Court of Claims had excluded.

Application of the canon in the manner plaintiffs propose would negate the intent that is manifest facially in the statute, and would be contrary to the general purpose of Congress throughout the history of the dual compensation legislation. The following statement, by Court of Claims Judge Littleton, has application to plaintiffs' argument relative to the canon of construction:

Rules of statutory interpretation and construction are not legal maxims or ends in themselves, but are rather aids in discovering the meaning to be attributed to the language employed by the legislature. The application of any particular rule may well be affected by other rules in order to avoid absurd results. Whether a statute is to be construed strictly or liberally depends on which construction will make the legislative intent and purpose effective. A liberal construction will not justify an extension of the scope of the statute beyond the obvious contemplation of the legislature, even though the statute be purely remedial in nature and the construction proposed will produce a most desirable result. On the other hand, strict construction will not be applied to defeat the clear intention of the legislature or to produce an absurd result, unless absolutely unavoidable.

*Otoe & Missouria Tribe of Indians v. United States*, 131 F.Supp. 265, 131 Ct.Cl. 593, 602 (1955).

In support of its argument that the DCA does not apply to the FRB, plaintiffs cite two Court of Claims decisions that interpreted a prior dual compensation law, the Economy Act of 1932. 5 U.S.C. § 59a repealed in 5 U.S.C. § 5531 et seq. (1982). In these decisions, *Gradall v. United States*, 161 Ct.Cl. 714, 329 F.2d 960 (1963) and *Cockrill v. United States*, 161 Ct.Cl. 752 (1963), the Court of Claims determined that the procedures in the Economy Act of 1932 did not apply to retired officers who received retired pay and at the same time received compensation for work in nonappropriated fund instrumentalities, the Army Exchange Service and the Air Force Exchange Service (*Gradall*), and the Fort Sam Houston Golf Club (*Cockrill*). The Court of Claims determined that the civilian positions in the post exchanges and in the golf club were not positions "under the United States Government" so as to bring the employment within the coverage of the Economy Act of 1932. The dual compensation provisions in section 212(a) of the Economy Act of 1932, according to the Court of Claims, was part of the legislative appropriations bill for fiscal 1933, and Congress was concerned with keeping depression year expenditures within the limits of appropriated funds. The concerns of Congress in the 1964 DCA were not so limited or specialized.

The decisions of the Court of Claims in *Gradall* and *Cockrill* do not apply to the facts in this case. Those decisions are concerned with a different law, created in a different time to deal with different problems. These decisions do not impact on, or control, plaintiffs' claims.

The December 16, 1983, decision of the Comptroller General on the claim of Robert E. Frazier is not binding on this court. The Comptroller General's analysis, however, is persuasive and the section of decision B–21226 captioned, "Application of 5 U.S.C. §§ 5531 and 5532 to Federal Reserve Board Employees," is a correct application of the law.

For the foregoing reasons, and the statements made at oral argument, defendant's motion for summary judgment is ALLOWED, and plaintiff's motion is DENIED. The Clerk is directed to dismiss the complaint.